[L. A. No. 4230. In Bank.—November 17, 1917.]

PRODUCERS TRANSPORTATION COMPANY (a Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

PUBLIC UTILITY—OIL PIPE-LINE—EMINENT DOMAIN—TAKING PRIVATE PROPERTY FOR PUBLIC USE.—Neither by the provisions of chapter 327 of the Statutes of 1913, page 657, nor by the like provision in section 23, article XII, of the state constitution, to the effect that every private corporation operating any pipe-line within the state for the transportation of crude oil, either directly or indirectly, to

or for the public, is a public utility, subject to such control and regulation by the Railroad Commission as may be provided by the legislature, may private property be taken for public use without compensation.

ID.—PROPERTY DEVOTED BY OWNER TO PUBLIC USE—RIGHT OF PUBLIC TO CONTROL.—Where, however, the owner voluntarily devotes property to a public use, the public may insist on the right to a voice in its regulation and control.

ID.—OIL PIPE-LINE—DEDICATION TO PUBLIC USE—EVIDENCE—EXERCISING RIGHT OF EMINENT DOMAIN — ESTOPPEL.—Where a corporation, which was incorporated for the purpose, among others, of conducting and operating an oil pipe-line, availed itself of the right of eminent domain in condemning property over which it constructed its pipe-line, that fact must be deemed conclusive evidence of a dedication of the property to public use, and it is estopped from afterward disclaiming the use, upon the faith of which judgment was rendered condemning the property.

ID.—RAILROAD COMMISSION—JURISDICTION—RIGHT TO DETERMINE FACTS ON WHICH JURISDICTION DEPENDS.—As the jurisdiction of the commission to regulate the rates of a corporation operating an oil pipe-line depended upon whether such corporation was engaged in the business of a common carrier in the transportation of oil, it was vested with power to determine facts upon the existence of which it was authorized to exercise jurisdiction.

APPLICATION for Writ of Review directed to the Railroad Commission of the State of California and to the members of the commission.

The facts are stated in the opinion of the court.

Lewis W. Andrews, Thomas O. Toland, A. V. Andrews, Andrews, Toland & Andrews, and Paul M. Gregg, for Petitioner.

Douglas Brookman, for Respondents.

VICTOR E. SHAW, J., *pro tem.*—Upon application by petitioner therefor, a writ of review was issued in the above-entitled proceeding directed to the Railroad Commission, in obedience to which respondent has certified to this court the record of its proceedings and order therein made affecting petitioner and which it challenges as being in excess of the jurisdiction of that tribunal.

In 1913 the legislature of the state enacted a statute, designated as chapter 327 and found in the Statutes of 1913, at page 657, wherein the legislature, among other things, declared that "every private corporation and every individual or association of individuals: . . . (b) Owning, operating, managing or controlling any pipe line or any part of any pipe line, plant or equipment for the transportation of crude oil, petroleum or the products thereof, directly or indirectly, to or for the public, for hire, compensation or consideration of any kind, paid or received, directly or indirectly, for such transportation, and which said pipe line, plant or equipment is constructed or maintained upon, along, over or under any public highway, and in favor of whom the right of eminent domain exists, . . . is hereby declared to be a common carrier and subject to the provisions of the act known as the 'Public Utilities Act,' approved December 23, 1911.''

On August 11, 1913, the commission, of its own motion, made an order requiring petitioner to appear before the commission at a specified time and place and show cause why the Railroad Commission should not make its order requiring petitioner to file with the commission schedules of its rates and charges for the transportation of crude oil, petroleum and the products thereof, and its rules and regulations in connection with such transportation, and otherwise to comply fully with the provisions of said chapter 327 of the Laws of 1913. In response to this order and citation, petitioner appeared at hearings at which evidence was adduced touching the question as to whether or not it was subject to the Public Utilities Act [Stats. 1911, Ex. Sess., p. 18]). The result of such hearings was a finding to the effect that petitioner was a common carrier and public utility in the transportation of crude oil, petroleum and the products thereof, by means of pipe-lines from the San Joaquin Valley oil fields, and as such subject to the Public Utilities Act of this state; and thereupon the commission ordered that petitioner file with the commission schedules of its rates and charges for the transportation of crude oil, petroleum and products thereof by means of pipe-lines from the San Joaquin Valley oil fields in the state of California and its rules and regulations in connection with such transportation.

Petitioner was incorporated under the laws of this state in June, 1909, for the purpose, among other things, of establish-

ing "a general transportation business for the purpose of transporting . . . any of the oils . . . produced . . . by this corporation, or any other person, firm, partnership, association or corporation, and for conducting the business of . . . carrying oils, petroleum," etc.

Its formation was due to the activities of the Independent Oil Producers Agency, the membership of which at said time consisted of about one hundred different and independent producers of oil and which membership, on August 1, 1913, up to which time no oil producer desiring to avail himself of the privilege had been refused admission to membership, had increased to the number of 175 (and all of whom were dependent upon unsatisfactory means for the transportation of their products to the markets). In order to finance the undertaking, the cost of which was some three million five hundred thousand dollars, furnished by the Union Oil Company, which owns practically all the stock of the Transportation Company, each member of the Independent Oil Producers Agency was required to sign a contract covering a term of years expiring January 1, 1920, agreeing to deliver to the agency for transportation and sale all the oil produced by him on specified lands, the covenants of which contract ran with and bound the lands of the producer; and in turn the Independent Oil Producers Agency, on June 11, 1909, made a contract with the Producers Transportation Company whereby the latter was given the exclusive right for a period of ten years from that date to transport at specified rates all crude oil controlled by the agency, and a contract similar in terms was required to be executed on the part of each member of the agency to the Transportation Company. On June 24, 1909, the Producers Agency made a contract with the Union Oil Company constituting the latter the exclusive sales agent for a period of ten years of all the oil controlled by the agency, agreeing to give such agent a stipulated commission for services so performed. The Producers Transportation Company produces no oil, but is operated solely as a carrier of oil for profit. Its pipe-lines extend from the oil fields to Port Harford, on the shores of the Pacific Ocean in San Luis Obispo County; in connection with which terminus the Union Oil Company has erected storage facilities and from which point, by means of oil vessels owned and chartered by said last-named company, it handled the oil, convey-

ing it to market, for which an additional charge is made. In reaching Port Harford the pipe-line extends in part over certain highways and streets, and a portion of the right of way over which it is constructed was acquired by the Producers Transportation Company in proceedings in eminent domain, wherein it alleged that it was "engaged in the business of transporting oil by means of pipe-lines as a common carrier for hire," which allegation was by the court found to be true, and it was thereupon adjudged that the use of the land sought to be condemned was a *public use* authorized by law, and that petitioner as a common carrier of oil for hire had the right to condemn the same as a right of way over which to construct its pipe-lines.

It thus appears that by its articles of incorporation petitioner declared that its purpose was to construct a pipe-line and by means thereof engage in a general transportation business of oil produced by any person, firm, or association; that claiming to be an agent of the state in charge of a public use, it seized private property, alleging that it was necessary for use in constructing this pipe-line, through and by means of which it proposed to serve the public, and that during all the time since completion thereof it, without discrimination, in accordance with the intention so to do as declared in its articles of incorporation, has, through and by means of said pipe-line, transported oil produced "by any person, firm, partnership, association, or corporation" applying for such service. True, it required such applicant to comply with its rules, exactions, and regulations, among which was membership—refused to none, however—in the Producers Agency, an incident of which was that for the term ending January 1, 1920, they should appoint the agency to act for them in the transportation and sale of their oil.

By the provision referred to only those persons and associations transporting oil by means of pipe-lines, "directly or indirectly, to or for the public, for hire," are declared to be common carriers and subject to the Public Utilities Act. A like provision is found in section 23, article XII, of the state constitution, which provides that "every private corporation . . . operating . . . any . . . pipe-line . . . within this state, for the transportation or conveyance of . . . crude oil . . . either directly or indirectly, to or for the public, and every common carrier, is hereby declared to be a public utility

subject to such control and regulation by the railroad commission as may be provided by the legislature.'' Neither by the provision of the act in question nor the provision of the constitution can the state subject private property to a public use, nor confer authority upon the Railroad Commission to assume control of private pipe-lines engaged in the transportation of crude oil. Neither by act of the legislature nor by declaration of the state constitution can private property be taken for public use without compensation therefor. (*Del Mar Water Co.* v. *Eshleman,* 167 Cal. 666, [140 Pac. 591, 948].) Where, however, the owner of property voluntarily devotes it to a public use, he in effect grants to the public an interest in such use, and to the extent of the interest so devoted to the public, the public may insist upon a voice in the control and regulation thereof. That petitioner, in the indirect manner stated, voluntarily assumed the duty of and embarked upon the business of a public carrier in transporting oil for hire, in our opinion, admits of no doubt. The conditions imposed, subject to which it transported oil, however burdensome, applied alike to all producers seeking its service; and subject to compliance therewith it carried everybody's oil to market. It is not the *ipse dixit* of the law, but the fact that petitioner has voluntarily devoted its property to a public use which justifies the control assumed by the Railroad Commission. The facts bring the case within the principle enunciated in what is known as the Elevator cases, entitled *Brass* v. *North Dakota,* 153 U. S. 391, [38 L. Ed. 757, 14 Sup. Ct. Rep. 857], *Budd* v. *New York,* 143 U. S. 517, [36 L. Ed. 247, 12 Sup. Ct. Rep. 468], and *Munn* v. *Illinois,* 94 U. S. 113, [24 L. Ed. 77], in the latter of which the court, speaking through Chief Justice Waite, says: ''When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created. He may withdraw his grant by discontinuing the use; but, so long as he maintains the use, he must submit to the control.'' The evidence upon which the commission based its action in making the order shows that petitioner by its voluntary act devoted its property, *indirectly at least,* to the use of the public in transporting oil, and that conceding its right, in the absence of an irrevocable dedication to discontinue the con-

duct of such public business, nevertheless until such discontinuance, its tolls, rules, and regulations are subject to the control of the commission.

A further and more potent reason, however, for upholding the action of the Railroad Commission is found in the fact that petitioner availed itself of the right of eminent domain in condemning property for the right of way over which it constructed its pipe-line.    To our minds, this must be deemed conclusive evidence of a dedication of such property to public use, since it could not have exercised such right other than in "behalf of a public use" (Code Civ. Proc., sec. 1238), as "an agent of the state or person in charge of such use." (Civ. Code, sec. 1001.)    In *State ex rel. Turnpike Co.* v. *American & E. News Co.,* 43 N. J. L. 381, it is said: "The fact that the legislature has granted the right to take private property clearly evinces a legislative intent to lay such companies under an obligation to the public to permit the use of their lines by all persons, under reasonable regulations; and in accepting the benefit of this law, the recipient of the same assumes the performance of this duty to the public."    As appears from the record, petitioner asserted and proved that it was a common carrier in the transportation of oil; thereby bringing itself directly within the provisions of the constitution (section 23, article XII), hereinbefore referred to.    Having thus acquired such right of way by holding itself out as a common carrier and as agent of the state in charge of a public use, without which it could not have seized property vested in private ownership, it should not now be heard in disclaimer of the profession so made and upon the faith of which judgment in its favor condemning the property to the public use of which it was in charge was rendered.

The contention that the commission had no power to determine the character of the business conducted by petitioner is without merit.    While, as said in *Holabird* v. *Railroad Commission,* 171 Cal. 691, [154 Pac. 831], no proceeding is authorized for the *mere purpose* of determining this question with respect to any person or corporation, nevertheless, under section 60 of the Public Utilities Act the commission is authorized, of its own motion, or upon the complaint of any person, to inquire into any act or thing done by any public utility and to make such order therein as may be necessary to compel such public utility to comply with the law

or with the orders or rules of the commission, but it does not authorize a proceeding for the *sole purpose* of inquiring and determining whether a particular person or corporation is carrying on a public utility or is engaged in a private enterprise. The jurisdiction of the commission to make the order depended upon the existence of certain facts, namely, whether petitioner was engaged in the business of a common carrier in the transportation of oil, and for the purpose of determining its jurisdiction it was vested with power to determine the facts upon the existence of which it was authorized to make the order. "Where the jurisdiction of a board depends on the existence of certain facts, the board has jurisdiction to determine whether or not those facts exist." (*Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180, [149 Pac. 35, 9 N. C. C. A. 466].)

In this proceeding we are not concerned with the contracts made between petitioner and the Producers Agency, upon the faith of which it is claimed the pipe-line was constructed. They are not affected by the order made. If such contracts are valid, no legal action had by the commission could impair the obligation thereof; if invalid, the argument based thereon is without force. Since the question presented is one as to the power of the commission, not as to its policy, as to which it may be said to have plenary power, the numerous objections based upon apprehension of results which may follow future action taken by the commission become immaterial, and hence need not be considered.

The order, in so far as it affects petitioner, is affirmed.

Sloss, J., Melvin, J., Henshaw, J., Shaw, J., and Angellotti, C. J., concurred.

Rehearing denied.