[S. F. No. 20433.   In Bank.   Nov. 25, 1960.]

CORONA CITY WATER COMPANY (a Corporation) et al.,
Petitioners, v. PUBLIC UTILITIES COMMISSION OF
THE STATE OF CALIFORNIA, Respondent.

Clayson, Stark & Rothrock and George G. Grover for Petitioners.

William M. Bennett, Chief Counsel, Roderick B. Cassidy, Assistant Chief Counsel, and Mary Moran Pajalich, Senior Counsel, for Respondent.

TRAYNOR, J.—In this proceeding Corona City Water Company and Temescal Water Company attack an order of the Public Utilities Commission denying Corona's application for permission to sell property to Temescal and determining that Temescal is a public utility subject to the jurisdiction of the commission.

Temescal is organized as a nonpublic utility mutual water company and has not heretofore been regulated by the commission. Corona is a regulated public utility water company that secures its water from Temescal as a shareholder of Temescal stock. In 1955 Corona secured the commission's approval to buy all of the assets of the Coronita Mutual Water Company and to extend its service to the former consumers supplied by that company, on condition that it retain the water production facilities of Coronita until further order of the commission. In 1956 Corona applied to the commission for permission to sell those facilities to Temescal on the ground that they were not useful to Corona's utility operations. Following a hearing on the application, the commission instituted an investigation on its own motion into the relationship between Corona and Temescal and the status of Temescal and reopened the hearing of Corona's application. After further hearings it found that Temescal is a public utility that has dedicated its property to public use (see Pub. Util. Code, §§ 216, 240, 241, 2701, 2702) and that it is not exempt from regulation under section 2705 of the Public Utilities Code. It also found that the water production facilities Corona obtained from Coronita were necessary and useful to Corona and denied its application for permission to sell those facilities to Temescal. Both companies join in attacking these findings.

Temescal and Corona are closely related. They have the same directors, the same secretary-treasurer, and the same general manager and assistant secretary-treasurer. One of the directors is president of Temescal, another is president of Corona and vice-president of Temescal, and a third is vice-president of Corona. Corona was organized by Temescal and owns 2,100 shares or approximately 19 percent of Temescal's outstanding stock. Before 1923 Temescal owned all of Corona's stock except for directors' qualifying shares. In that year, fearful that such ownership might affect its status as a mutual, Temescal conveyed its Corona stock to trustees to hold for the benefit of Temescal stockholders. Under the terms of the trust no beneficial interest in Corona stock can be severed from the ownership of Temescal stock, and in the administration of the trust, the "trustees shall at all times be amenable to the will and direction of the stockholders representing a majority of the subscribed capital stock" of Temescal. The

trustees are the president and secretary of Temescal and the president of Corona.

The general manager of the two companies testified that it is their policy to operate in such a way as to promote the development of the Corona area for the public benefit. Temescal has undertaken to secure the necessary water sources and production facilities to provide water for both companies, and on two occasions it has exercised the power of eminent domain to that end. In addition to supplying its other stockholders, Temescal has declared its policy to supply Corona "with water stock and water at all times to meet the full requirements of said utility and its customers." It also has authorized but unissued shares that may be purchased by persons in its service area who wish to secure water by becoming stockholders.

The physical operations of the two companies are closely integrated, and together they provide overall water service for the city of Corona and surrounding territory. Temescal has engaged primarily in securing water for itself and Corona and in delivering water to its agricultural stockholders for irrigation purposes. Corona has engaged primarily in delivering water to the public in the city of Corona for domestic purposes. As the companies have grown, however, there has been some overlapping of their functions and service areas. Thus, where it has been physically convenient to do so, Temescal has supplied water from its lines through Corona meters to nonstockholders of Temescal, and Corona has supplied water from its lines without charge to Temescal stockholders for spraying their citrus groves. Corona charges the nonstockholders for the water metered by it, but both companies consider the water delivered by Corona to Temescal stockholders as supplied under their stock entitlement. At about the time the commission instituted its investigation, Corona and Temescal began offsetting the amount of water Temescal stockholders received from Corona against the water charged to Corona by Temescal. Corona does not charge Temescal for the use of its lines in delivering water to Temescal stockholders, however, and Temescal does not charge Corona for the use of its lines in delivering water to Corona meters.

In view of Temescal's extensive activities in close collaboration with an admitted public utility water corporation, we find no merit in Temescal's contention that it has not

dedicated its property to public use. Thus, it has offered and provided unlimited service to Corona (see *Richfield Oil Corp. v. Public Util. Com., ante,* pp. 419, 430, 431, 438, 439 [6 Cal. Rptr. 548, 354 P.2d 4]), it has condemned property for public use (see *Producers Transp. Co. v. Railroad Com.,* 176 Cal. 499, 505 [169 P. 59]), and it directly serves anyone in its service area who becomes a stockholder. (See *Yucaipa Water Company No. 1 v. Public Utilities Com., ante,* pp. ——, —— [9 Cal.Rptr. 239, 357 P.2d 295].)

Temescal contends, however, that even if it has dedicated its property to public use, it is exempted from public utility regulation by section 2705 of the Public Utilities Code. That section provides:

"Any corporation or association which is organized for the purpose solely of delivering water to its stockholders or members at cost, and which delivers water to no one except its stockholders or members, or to the State or any agency or department thereof, or to any school district, or to any other mutual water company, at cost, is not a public utility, and is not subject to the jurisdiction, control or regulation of the commission."

The commission contends that Temescal is not exempt from regulation under this section on the ground that it is delivering water to nonstockholders through the agency of its *alter ego* Corona, which it created and controls for the purpose of evading lawful regulation. Temescal contends that the separate corporate entities may not be disregarded unless an inequitable result would otherwise occur (see *Automotriz etc. De California v. Resnick,* 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042]) and that no such result has been shown in this case. In its view, the commission seeks to disregard the separate corporate entities, not to prevent an unlawful evasion of its jurisdiction, but solely to exert jurisdiction that the Legislature has denied it.

In *Yucaipa Water Company No. 1 v. Public Utilities Com., ante,* pp. 823, 830 [9 Cal.Rptr. 239, 357 P.2d 295], we pointed out that "The exemption created by section 2705 indicates a legislative determination that when a mutual water corporation is substantially customer-controlled and delivers water at cost, the usual judicial contract remedies available to those who deal with it are an adequate substitute for public utility regulation." The reasons underlying the exemption are obviously not present, however, when, as

in this case, a major customer has no voice in the management and, as the creature of the mutual and its other stockholders, is in no position effectively to enforce its rights as a stockholder. To hold that such a captive stockholder is a stockholder within the meaning of section 2705 would violate the principles on which the statute is based. ■ Accordingly, the word "stockholder" in that section must be interpreted to mean, not a mere conduit of voting power by which the independent stockholders echo their own votes, but a bona fide stockholder that is free independently to exercise its voice in management and to enforce its legal rights.

■ It is no answer to these considerations to assert that no infringement of Corona's rights has been proved in this case, for it is clear that whether or not such an infringement has occurred, the intercorporate relationship is fraught with hazards to Corona and its customers. Thus, the largely agricultural independent stockholders of Temescal are in a position to subsidize their water service at the expense of Corona and to prevent Corona's objecting by their control of it. It is the existence of such power, not just its improper exercise, that violates the principles underlying the exemption of section 2705.

■ The potentiality of abuse is illustrated by the position of Corona and Temescal with respect to the proposed sale to Temescal of the water production facilities Corona purchased from Coronita. Those facilities include a well from which Corona can pump water at a much lower cost than it can buy water from Temescal. Both Corona and Temescal contend, however, that Corona cannot lawfully pump water from the well on the ground that a public utility does not succeed to an overlying water right being exercised by a mutual for the benefit of its stockholders when it purchases the mutual's assets and extends service to the mutual's former stockholders. They assert that it is only Temescal, as another mutual exercising the overlying rights of its stockholders, that can lawfully pump the Coronita well. Corona therefore proposes to sell the well to Temescal at a price that does not include the value of the water right. The commission was not convinced that Corona could not lawfully pump the well, and it pointed out that the only objection to Corona's doing so came from a citrus growing corporation that is a stockholder of Temescal and whose president was then president

of Corona. The commission, however, refused to determine whether Corona could lawfully pump the well on the ground that the issue should be determined in appropriate litigation. We too deem it inappropriate to determine that issue in the absence of an adversary presentation of it and the presence of other interested parties. There is, however, at least an apparent anomaly in Corona's and Temescal's position that Corona cannot lawfully pump water from the Coronita well to serve Coronita's former stockholders but that Corona can supply those same consumers with the same water if Temescal pumps it for it. Were Corona not controlled by Temescal, the apparent anomaly of the position it now asserts might have indicated the wisdom of asserting and litigating a right to pump the well instead of conceding that that right did not exist.

The foregoing considerations are determinative of Corona's and Temescal's attack on the commission's refusal to permit Corona to make the proposed sale. The Coronita well is obviously valuable to Corona if Corona can lawfully pump it, and although Corona secured independent legal advice that it could not, in view of Corona's domination by Temescal and Temescal's interest in the question, the commission was justified in requiring that the issue be litigated before approving the sale. (See Pub. Util. Code, § 851.)

The order is affirmed.

Gibson, C. J., Peters, J., White, J., and Dooling, J., concurred.

McComb, J., dissented.

Petitioners' application for a rehearing was denied December 21, 1960. McComb, J., was of the opinion that the petition should be granted.