[S. F. No. 20365. In Bank. Nov. 25, 1960.]

YUCAIPA WATER COMPANY NO. 1 (a Corporation), Petitioner, v. PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA, Respondent; YUCAIPA DOMESTIC WATER COMPANY (a Corporation), Real Party in Interest.

Surr & Hellyer and James R. Edwards for Petitioner.

Clayson, Stark & Rothrock, George G. Grover, Best, Best & Krieger, James H. Krieger, Arthur L. Littleworth and Dudley K. Wright as Amici Curiae on behalf of Petitioner.

William M. Bennett, Chief Counsel, Roderick B. Cassidy, Assistant Chief Counsel, and Mary Moran Pajalich, Senior Counsel, for Respondent.

Hyer & Graeber, Taylor & Smith and Edward F. Taylor for Real Party in Interest.

TRAYNOR, J.—In this proceeding Yucaipa Water Company No. 1 attacks an order of the Public Utilities Commission determining that it is a public utility water corporation subject to the jurisdiction of the commission and directing it to file a financial report and cease and desist from increasing its rates to the Yucaipa Domestic Water Company pending further commission action.

No. 1 is organized as a nonpublic utility mutual water company and has not heretofore been regulated by the commission. Domestic is a regulated public utility water corporation. It secures all of its water from No. 1 and owns approximately 5 per cent of No. 1's stock. In 1959 a dispute arose between the two companies over a substantial increase in the rate No. 1 proposed to charge Domestic and extensions of service by Domestic into areas served by No. 1. Each company filed a complaint against the other with the commission, and thereafter the commission instituted an investigation on its own motion into the operations of No. 1. The parties stipulated that the commission should first determine whether or not No. 1 is a public utility subject to its jurisdiction, and its determination of that issue is the only question before us for review. The commission found that No. 1 is a public utility that has dedicated its property to public use (see Pub. Util. Code, §§ 216, 240, 241, 2701, 2702) and that it is not exempt from regulation under section 2705 of the Public Utilities Code. No. 1 attacks both of these findings.

No. 1 operates in an area of about 3,500 acres including Yucaipa Township. It was organized in 1910 and initially supplied water primarily for irrigation purposes. At the present time, however, about 74 per cent of its sales are to domestic users. It also provides service to the Yucaipa Domestic Water Company, poultry farms, trailer parks, scheduled water users, and special users at specified rates. Special users include hospitals, schools, churches, parks, and other large users. With the exception of one domestic user, it supplies water only to its shareholders and lessees of shares from its shareholders. Its shares are freely transferable and are not appurtenant to the land, and users may obtain water in addition to the per-share entitlement by paying special rates. In 1959 No. 1 had about 2,000 domestic users and supplied water to over 100 lessees of shares. It maintained a list of shareholders who were willing to lease shares and referred nonshareholder applicants for service to them. It billed lessees of shares directly, but held the shareholder liable for any unpaid bill. In each of the years 1956, 1957, and 1958 it added 80 to 100 new domestic users to its system, and to increase the number of permissible service connections, it split its stock to permit a connection for each half share instead of each share.

No. 1 contends that since it is organized as a nonpublic utility mutual water corporation that supplies water only to its shareholders, lessees of shares from its shareholders, and one other person, it has not held itself out as willing to supply water to the public or any portion thereof and that it has not therefore dedicated its property to public use. (See *Richfield Oil Corp.* v. *Public Util. Com., ante,* pp. 419, 438 [6 Cal. Rptr. 548, 354 P.2d 4], and cases cited.) No. 1's organization as a mutual and its formal limitations on its services do not preclude a finding of dedication, however, if it has held itself out as willing to supply water to the public or any portion thereof.

"Property may be shown to have been devoted to a public use by implication from the acts of its owners and their dealings and relations to such property, without regard to statutory provisions. [Citations.] The test to be applied . . . is whether or not those offering the service have expressly or impliedly held themselves out as engaging in the business of supplying the water to the public as a class, 'not necessarily to all of the public, but to any limited portion

of it, such portion, for example, as could be served from his system, as contradistinguished from holding himself out as serving or ready to serve only particular individuals, either as a matter of accommodation or for other reasons peculiar and particular to them. (Citing cases.) The rule, of course, is that if there was any evidence before the Commission that would justify its finding, its order cannot be annulled.' (*Van Hoosear* v. *Railroad Com.*, 184 Cal. 553, 554 [194 P. 1003, 1004].)'' (*S. Edwards Associates* v. *Railroad Com.*, 196 Cal. 62, 70 [235 P. 647]; see also *California Water & Tel. Co.* v. *Public Util. Com.*, 51 Cal.2d 478, 493-494 [334 P.2d 887]; *Western Canal Co.* v. *Railroad Com.*, 216 Cal. 639, 646-647 [15 P.2d 853]; *Rogina* v. *Mendocino State Hospital*, 53 Cal. P.U.C. 108, 111; *Plumas-Sierra Rural Electric Cooperative, Incorporated*, 50 Cal. P.U.C. 301, 309; *California Electric Power Co.* v. *Mesa Electric Cooperative, Inc.*, 47 Cal. P.U.C. 118, 126.)

The evidence supports the commission's finding of dedication in this case. It is true that No. 1 did not expressly offer service to everyone in its service area on condition that prospective consumers purchase shares of stock from it. Had it done so, its holding itself out to serve the public would be patent, and the attaching of a condition that any member of the public could meet would not affect its offer. ▉ Dedication may also be shown by implication, however, and in the present case, it may clearly be inferred. ▉ Thus, No. 1 steadily increased the number of its service connections; it split its shares to double the permissible number of such connections; it supplied water to a substantial number of lessees of shares; and it expedited the leasing of shares to those who wished water service. There is no evidence that anyone in its service area who wished water service could not obtain it by purchasing or leasing half a share or more. Under these circumstances, the commission could reasonably infer that No. 1 supplied its shareholders and lessees of its shares not merely for the reason ''peculiar and particular to them'' that they were such, but primarily for the reason that they were members of the public in No. 1's service area who accepted its offer of service by becoming shareholders or lessees of shares.

No. 1 contends that even if it has dedicated its property to public use, it is exempted from public utility regulation by section 2705 of the Public Utilities Code. That section provides:

''Any corporation or association which is organized for the purpose solely of delivering water to its stockholders or mem-

bers at cost, and which delivers water to no one except its stockholders or members, or to the State or any agency or department thereof, or to any school district, or to any other mutual water company, at cost, is not a public utility, and is not subject to the jurisdiction, control or regulation of the commission.''

Its converse, section 2702, provides:

''Any corporation or association organized for the purpose of delivering water solely to its stockholders or members at cost which delivers water to others than its stockholders or members, or the State or any department or agency thereof or any school district, or any other mutual water company, for compensation, becomes a public utility and is subject to Part 1 of Division 1 and to the jurisdiction, control, and regulation of the commission.'' (See also Pub. Util. Code, §§ 216, 240, 241, 2701.)

The commission contends that No. 1 is a public utility as defined in subdivision (c) of section 216[1] of the Public Utilities Code on the ground that it delivers water to Domestic, which in turn delivers it to the public. It points out that subdivision (c) of section 216 refers to the delivery of a commodity ''either directly or indirectly'' to the public and asserts that the word ''delivers'' in section 2705 should be interpreted to mean ''delivers directly or indirectly'' to avoid a conflict with subdivision (c). ▮▮▮ The very purpose of section 2705, however, is to exclude the water corporations there defined from the general provisions of Division 1 of Part 1 of the Public Utilities Code defining public utilities (Pub. Util. Code, §§ 216, 240, 241) and the more specific provisions of section 2701 redefining public utility water corporations. Moreover, there is nothing in the broad definition of subdivision (c) of section 216 to indicate that it, any more than any of the other definitions of public utilities, is paramount to the express exception created by section 2705. Accordingly, we must look beyond subdivision (c) to determine whether the word ''delivers'' in section 2705 means ''delivers directly or indirectly.''

---

[1]''When any person or corporation performs any service or delivers any commodity to any person, private corporation, municipality or other political subdivision of the State, which in turn either directly or indirectly, mediately or immediately, performs such service or delivers such commodity to or for the public or some portion thereof, such person or corporation is a public utility subject to the jurisdiction, control, and regulation of the commission and the provisions of this part.''

The exemption created by section 2705 indicates a legislative determination that when a mutual water corporation is substantially customer-controlled and delivers water at cost, the usual judicial contract remedies available to those who deal with it are an adequate substitute for public utility regulation. That determination applies when the customers include a public utility as much as when they do not.

The commission contends, however, that a utility is at the mercy of a mutual when, as in this case, the mutual is the utility's sole source of supply and that commission regulation of the mutual is therefore essential. The utility is no more at the mercy of the mutual than any individual customer who has no other source of water, and as to individual customers, the Legislature has clearly determined that public utility regulation is not essential. Moreover, neither an individual shareholder nor a utility shareholder is at the mercy of a mutual because the mutual is the only source of water. They not only have a voice in the management of the mutual, but they may invoke the jurisdiction of the commission if the mutual has stepped outside of the exemption provided by section 2705, and they may enforce their water rights in court if it has not. It is true that the public utility's customers have no voice in the management of the mutual, but they are protected vis-à-vis the utility by commission regulation, and the utility's securing water from the mutual poses no greater indirect threat to its customers' interests than its securing water from any other unregulated source.

Thus, there is nothing in the over-all pattern of water corporation regulation that compels reading the words ''directly or indirectly'' into section 2705 to subserve its purpose, and the fact that those words are not in the statute is cogent evidence that they were purposefully omitted. Moreover, the Legislature has demonstrated that deliveries to shareholders for redelivery to the public do not destroy the exemption of mutual water corporations. Thus, from time to time the Constitution has been amended to permit public bodies to own shares in mutual water companies (art. IV, §§ 31b, 31c, 31d), and in 1956 these provisions were consolidated and expanded by amending section 13 of article XII. That section now provides that ''The State shall not in any manner loan its credit, nor shall it subscribe to, or be interested in the stock of any company, association, or corporation, except that the State and each political subdivision, district, municipality, and public agency thereof is hereby authorized to acquire

and hold shares of the capital stock of any mutual water company or corporation when such stock is so acquired or held for the purpose of furnishing a supply of water for public, municipal or governmental purposes; and such holding of such stock shall entitle such holder thereof to all of the rights, powers and privileges, and subject such holder to the obligations and liabilities conferred or imposed by law upon other holders of stock in the mutual water company or corporation in which such stock is so held.'' When the Legislature proposed this amendment to the people it interpreted ''delivers water to no one except its stockholders'' as not precluding redelivery of water by a stockholder to the public. Otherwise, the very exercise of the authority conferred by the amendment would defeat the exemption of section 2705, and the public body would not be entitled ''to all of the rights, powers and privileges'' and subject to ''the obligations and liabilities'' of the mutual's stockholders, but on the contrary all of the stockholders would be converted to stockholders of a regulated public utility and their rights, powers, privileges, obligations, and liabilities altered accordingly.

In the present case, however, the evidence supports the commission's finding that No. 1 delivered water to others than stockholders; it delivered water to over 100 lessees of shares of stock and one other person. Even if it is assumed that the latter delivery was *de minimis,* the deliveries to lessees were not. Lessees of shares are not stockholders, and to interpret the word ''stockholders'' in section 2705 to mean ''stockholders or lessees of stock'' would not only require reading into the statute words that are not there but violate the basic principle of customer control on which the exemption is based.

*Pajaro Valley Cold Storage Co.* v. *Public Utilities Com., ante,* p. 256 [5 Cal.Rptr. 313, 352 P.2d 721], relied upon by No. 1 is not contrary to our conclusion herein. In that case we held that a cooperative warehouse that stored goods for persons who leased space from some of its 27 members did not thereby dedicate its property to public use. That case did not involve the question whether such storage for nonmembers would defeat an express statutory exemption applicable to cooperatives that had dedicated their property to public use, and it is therefore not in point on the scope of the exemption section 2705 affords to mutual water companies that have dedicated their property to public use. The

issue in the Pajaro case was whether the storage of goods for persons who leased space from members was such service by the cooperative itself to the public generally so as to constitute dedication and make the warehouse a public utility. (Pub. Util. Code, §§ 239, 2508.) Since the cooperative had no control over what its members did with their allotted space, we held that the cooperative could not be held accountable for some of its members' individual solicitation of business for their space, and since there was no evidence that the cooperative, as distinct from its members, had held itself out to serve the public, we concluded that the cooperative had not dedicated its property to public use. In the present case, however, No. 1 was not obligated to deliver water to lessees of shares, for it could have insisted, in accord with its declared corporate purpose, on delivering water only to shareholders. Instead, however, it actively expedited the leasing of shares to those who wished water service, and such activity coupled with its other activities set forth above clearly supported the commission's finding that it had dedicated its property to public use.

In a letter filed with the court, counsel for No. 1 state that they were mistaken in their belief that shareholders of No. 1 leased their shares to nonshareholders and that they learned for the first time following oral argument in this court that all of the lessees of shares also owned shares of No. 1 and that No. 1 has never delivered any water to lessees of shares who were not already shareholders in their own right. They requested an opportunity to prove these facts. The evidence before the commission, however, supports its finding that water was delivered to nonshareholders. Thus, No. 1's secretary testified that anyone coming into the office who wished to lease shares was referred to shareholders and could secure the amount of water he would be entitled to under the shares leased.

 Section 1757 of the Public Utilities Code provides that ''No new or additional evidence may be introduced in the Supreme Court, but the cause shall be heard on the record of the commission as certified to by it.'' It also provides that ''The review shall not be extended further than to determine whether the commission has regularly pursued its authority . . . .'' (See also *Miller* v. *Railroad Com.*, 9 Cal. 2d 190, 200 [70 P.2d 164, 112 A.L.R. 221].) Obviously, the regularity of the commission's action cannot be challenged

on the basis of evidence not presented to it. Moreover, even if we assume, despite the stated limitations of section 1757, that there is inherent power in our review jurisdiction to remand a proceeding to the commission in a proper case to enable it to consider newly-discovered evidence, that power would be subject to at least as stringent limitations as are applicable in cases where such power has been expressly conferred. Subdivision (d) of section 1094.5 of the Code of Civil Procedure provides with respect to the review of other administrative decisions that "Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced" at the administrative hearing it may remand "the case to be reconsidered in the light of such evidence." (See also Code Civ. Proc., § 657, subd. 4.) No. 1 has made no showing that would justify such relief in this case. Thus, the identity of the lessees of shares to whom No. 1 delivered water was peculiarly within its knowledge, and the relevance of the identity of those customers to the question of dedication and the exemption of section 2705 was not only readily apparent, but was expressly pointed out by counsel for Domestic both at the hearing before the commission's examiner and in their brief filed with the commission.

The order is affirmed.

Gibson, C. J., Peters, J., White, J., and Dooling, J., concurred.

McComb, J., dissented.

Petitioner's application for a rehearing was denied December 21, 1960. McComb, J., was of the opinion that the petition should be granted.