[S. F. No. 22561. In Bank. Mar. 29, 1968.]

GREYHOUND LINES, INC., Petitioner, v. PUBLIC UTILITIES COMMISSION, Respondent.

William W. Schwarzer, Craig McAtee and McCutchen, Doyle, Brown & Enersen for Petitioner.

Mary Moran Pajalich, Roderick B. Cassidy, Timothy E. Treacy and Donald M. Grant for Respondent.

PETERS, J.—Petitioner Greyhound Lines, Inc. seeks review of Decision No. 72297 of the Public Utilities Commission which compels extension of commuter bus service over routes in the San Francisco Bay Area.[1] Greyhound is a pas-

---

[1] In September 1964 the commission, acting on its own motion, instituted an investigation to determine, inter alia, whether Greyhound should be ordered to expand its Bay Area commutation operations. Following hearings, the commission ordered two extensions of year-round, peak-hour commutation service. This order was subsequently annulled because it did not include separately stated findings of fact on all material issues, as required by section 1705. (*Greyhound Lines, Inc.* v. *Public Utilities Com.*, 65 Cal.2d 811 [56 Cal.Rptr. 484, 423 P.2d 556].)

Without further hearing, the commission in Decision No. 72297 ordered issuance of an amended certificate of public convenience and necessity to Greyhound for the establishment and operation of year-round, peak-hour commutation service between the same points and over the same routes as previously ordered. This decision contained extensive findings of fact and conclusions of law.

senger stage corporation, as defined in Public Utilities Code section 226,[2] operating buses transporting passengers, baggage, and express pursuant to a certificate of public convenience and necessity issued under section 1031.

The commission ordered that Greyhound extend its passenger stage service over routes in San Mateo County on Skyline Boulevard between a point in Daly City and a point west of Belmont, and in Contra Costa County on Ygnacio Valley Road between a point in Walnut Creek and a point in Concord. The commission found that public convenience and necessity required the establishment of both routes, that both routes were within territories in which Greyhound had dedicated its property to public service, and that section 762 provided the authority to order the service. The commission denied a petition for rehearing, and this court issued a writ of review. We have concluded that the order should be affirmed.

 Greyhound contends that the commission has not regularly pursued its authority because section 762 does not authorize it to require the rendition of a service different in scope from that provided before. Section 762 provides in pertinent part: ''Whenever the commission, after a hearing, finds that additions, extensions, repairs, or improvements to, or changes in, the existing plant, equipment, apparatus, facilities, or other physical property of any public utility . . . ought reasonably to be made, or that new structures should be erected, to promote the security or convenience of its employees or the public, or in any other way to secure adequate service or facilities, the commission shall make and serve an order directing that such additions, extensions, repairs, improvements, or changes be made or such structures be erected in the manner and within the time specified in the order.'' The commission found that this section ''provides the necessary authority . . . to order the additional service.''

 There is a strong presumption of validity of the commission's decisions (*Market St. Ry Co.* v. *Railroad Com.*, 24 Cal.2d 378, 399 [150 P.2d 196], affd. 324 U.S. 548 [89 L.Ed. 1171, 65 S.Ct. 770]; *Western Canal Co.* v. *Railroad Com.*, 216 Cal. 639, 645-646 [15 P.2d 853]), and the commission's interpretation of the Public Utilities Code should not be disturbed unless it fails to bear a reasonable relation to statutory pur-

---

[2]All section references are to the Public Utilities Code, unless otherwise indicated.

poses and language (see *Southern Pac. Co.* v. *Public Utilities Com.,* 41 Cal.2d 354, 367 [260 P.2d 70] ; Netterville, *Administrative "Questions of Law" and the Scope of Judicial Review in California* (1956) 29 So.Cal.L.Rev. 434, 451-453; Comment, *"Basic Findings" and Effective Judicial Review of the California Public Utilities Commission* (1966) 13 U.C.L.A. L.Rev. 313, 333-334).

█ Section 762 constitutes a general provision dealing with the power of the commission over the equipment, practices, and facilities of public utilities. The language of section 762 is oriented more to tangible utility property than to service. Thus Greyhound argues that the commission can order it to construct a new bus terminal but cannot order it to reroute its buses from one highway to the next. However, the statute has been applied in ordering service extensions by both stationary and carrier utilities without question of its applicability. (E.g., *Atchison etc. Ry. Co.* v. *Railroad Com.,* 173 Cal. 577 [160 P. 828, 2 A.L.R. 975] ; *Del Mar Water etc. Co.* v. *Eshleman,* 167 Cal. 666 [140 P. 591, 948].) █ The focal issue in such cases has regularly and properly been the question of dedication. It was early decided and remains the law that the perimeter of commission authority to order service modifications is staked out by the limits of a utility's dedication or devotion of its property to public use. The power to order "additions, extensions, repairs, improvements" within the scope of dedication is extensive; without the scope of dedication, the commission's power is ineffectual. (E.g., *California Water & Tel. Co.* v. *Public Util. Com.,* 51 Cal.2d 478, 489, 502 [334 P.2d 887] ; *Southern Pac. Co.* v. *Public Utilities Com., supra,* 41 Cal.2d 354, 367-368; *Atchison etc. Ry. Co.* v. *Railroad Com.,* 209 Cal. 460 [288 P. 775], affd. 283 U.S. 380 [75 L.Ed. 1128, 51 S.Ct. 553] ; *Hollywood Chamber of Commerce* v. *Railroad Com.,* 192 Cal. 307, 312 [219 P. 983, 30 A.L.R. 68] ; *Atchison etc. Ry. Co.* v. *Railroad Com. supra,* 173 Cal. 577, 583; *Del Mar Water etc. Co.* v. *Eshleman, supra,* 167 Cal. 666, 679-681 (concurring opinion) ; *Pacific Tel. etc. Co.* v. *Eshleman,* 166 Cal. 640, 680 [137 P. 1119, Ann.Cas. 1915C 822, 50 L.R.A. N.S. 652] ; 41 Cal.Jur.2d, Public Utilities, § 42, pp. 284-287.)

Greyhound asserts another limitation on commission power under section 762. █ Before any passenger stage corporation can operate over a particular route in California, it

must first obtain from the commission a certificate declaring that the public convenience and necessity require such operation.[3]　　　Section 762 does not mention the issuance of certificates. Greyhound concludes that the commission cannot issue amended certificates under section 762 nor order operations requiring certification.

Legislative failure to act or speak on the subject of certificates of passenger stage corporations in section 762 or in the article of which it is a part is unremarkable. Section 762 is a general section in a general article regarding equipment, practices, and facilities of many utilities. By contrast, sections 1031 and 1032 are specially directed to certificates of passenger stage corporations.

The portions of the code controlling equipment, practices, and facilities need not and do not particularize commission power over certificates of passenger stages. The associated power does appear, however. Section 1032 provides that the commission "may attach to the exercise of the rights granted by the certificate such terms and conditions as, in its judgment, the public convenience and necessity require." Less directly but not less persuasively, the Legislature has addressed itself to the question of the powers which must pertain to the commission as a regulatory body under the statutes. Section 701 provides: "The commission may supervise and regulate every public utility in the State and may do all things, whether specifically designated in this part or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction." The conclusion to be drawn is that the commission may issue a certificate, a regulatory document, to conform with orders which it has authority to make. (Cf. *Milwaukee & Suburban Transport Corp.* v. *Public Service Com.* (1954) 267 Wis. 144 [64 N.W.2d

---

[3]Certificates specifically describe routes to be followed and points to be served, and operate both as restrictions and authorizations. The general purposes of certificates in utility regulation are to protect the public from speculation and duplication of facilities, and to protect utilities from competition. (See *Motor Transit Co.* v. *Railroad Com.*, 189 Cal. 573, 580-581 [209 P. 586]; Hall, *Certificates of Convenience and Necessity* (1929) 28 Mich.L.Rev. 107, 107-109; Lilienthal & Rosenbaum, *Motor Carrier Regulation by Certificates of Necessity and Convenience* (1926) 36 Yale L.J. 163, 166-168; Comment (1912) 1 Cal.L.Rev. 73, 74-75.) In the case of a passenger stage corporation the certificate—unlike a franchise—serves all these purposes and in denominating routes serves the additional purpose of granting a permissive, limited property right to use public streets. (*Western Motor Transport Company*, 20 C.R.C. 1038.)

856].) Accordingly, we turn to Greyhound's second contention.

 Greyhound emphatically denies that it has dedicated its resources to the services ordered. It argues that its certificate of public convenience and necessity is unequivocal evidence of the extent of the duty which it has assumed. Because Greyhound already serves the "points" or termini involved in the order, the controversy is limited to routes. Greyhound would limit dedication to the streets on which its certificate allows it to travel. The commission, taking a broader view, relies on the proposition that Greyhound has dedicated its operations to serve the public within the *territories* in which the proposed additional service would be rendered. Authority for this theory is found, inter alia, in the language of section 1032 which provides that the "commission may . . . issue a certificate to operate in a *territory* already served by a certificate holder . . . only when the existing passenger stage corporation or corporations serving such *territory* will not provide such service to the satisfaction of the commission."

 The requirement of dedication as a condition precedent to regulation is not found in the statutes. This judicial doctrine, in its pristine form, was buttressed by constitutional principles which now have passed into history.[4] Dedication continues to perform important functions in the interstices of the Public Utilities Code. But its *raison d'etre* is attenuated, and it would be inappropriate to extend its restraining power further than logic and precedent require.

 Although there must be an unequivocal intention to dedicate property to a public use (e.g., *Richardson* v. *Rail-*

---

[4]In *Richfield Oil Corp.* v. *Public Util. Com.*, 54 Cal.2d 419, 425 [6 Cal. Rptr. 548, 354 P.2d 4], it was contended that the constitutional objections which gave rise to the requirement of dedication did not survive the decision of the United States Supreme Court in *Nebbia* v. *New York*, 291 U.S. 502 [78 L.Ed. 940, 54 S.Ct. 505, 89 A.L.R. 1469], and that therefore the court should "reinterpret the relevant statutes and give effect to the plain meaning of their terms to the extent constitutionally permissible today." (See Manley, *Nebbia Plus Fifteen* (1949) 13 Albany L.Rev. 11, 19.) Conceding the correctness of this argument, the court stated that "In view of the history of the [Public Utilities] [A]ct and the substantial reliance on its consistent interpretation and application by this court and the commission for more than 40 years, however, it must be concluded that the Legislature by its repeated reenactment of the definitions of public utilities without change has accepted and adopted dedication as an implicit limitation on their terms." (54 Cal.2d at p. 430.)

*road Com.*, 191 Cal. 716, 721 [218 P. 418] ; *Allen* v. *Railroad Com.*, 179 Cal. 68, 85 [175 P. 466, 8 A.L.R. 249]), such dedication may be inferred (*Yucaipa Water Co. No. 1* v. *Public Utilities Com.*, 54 Cal.2d 823, 827 [9 Cal.Rptr. 239, 357 P.2d 295]). ▉ There is a strong presumption of validity of commission orders (Pub. Util. Code, § 1757; see Comment, *"Basic Findings" and Effective Judicial Review of the California Public Utilities Commission, supra,* 13 U.C.L.A. L.Rev. 313), and a finding of dedication will not be disturbed if there is any substantial evidence before the commission to support it. (*California Water & Tel. Co.* v. *Public Util. Com., supra,* 51 Cal.2d 478, 493.)

Greyhound asserts that both logic and precedent require that the order be annulled because the commission's theory is in direct conflict with California law which makes a "fundamental distinction" between the measure of dedication made by stationary and carrier utilities. Stationary utilities, such as gas, water, and electric companies, normally extend their lines to their customers. Carriers normally do not. (*California Water & Tel. Co.* v. *Public Util Com., supra,* 51 Cal.2d 478, 492-493; *Atchison etc. Ry. Co.* v. *Railroad Com., supra,* 173 Cal. 577, 586.) Stationary utilities, under the terms of their franchises, are normally obligated to extend their service area should the municipality grow. Carriers, under the terms of their franchises, are normally not so obligated. (*Hollywood Chamber of Commerce* v. *Railroad Com., supra,* 192 Cal. 307, 312.) ▉ In all cases, the obligation to serve, extend, or grow is delimited by and coextensive with dedication. In all cases, the franchise is an important measure of dedication. Greyhound equates its certificate of convenience and necessity with a franchise, and argues that it should be conclusive as to the scope of dedication. Moreover, it contends that the commission's "territorial" interpretation of section 1032 is contrary to prior law.

Greyhound is incorrect in asserting that a certificate is equivalent to a franchise (*Western Motor Transport Company, supra,* 20 C.R.C. 1038; Hall, *Certificates of Convenience and Necessity, supra,* 28 Mich.L.Rev. 107, 110), and both parties misplace considerable reliance on their arguments concerning "areas" or "strips" of land.

The preoccupation with territoriality which permeates the concept of dedication is a somewhat inaccurate by-product of legal history. Many of the earliest dedication cases involved

stationary utilities. The criteria of territory served was useful in determining the fact and extent of dedication. (Cf. *Richfield Oil Corp.* v. *Public Util. Com., supra,* 54 Cal.2d 419, 427-429 (early cases collected).) This fortuity (cf. Llewellyn, The Common Law Tradition: Deciding Appeals (1960) pp. 260-264), and the fact that common law and statutory dedication outside the utility field normally involve real property (e.g., Comment, *Dedication of Land in California* (1965) 53 Cal. L.Rev. 559) gave birth to a rubric of territoriality in utility dedication law which has persisted, and in some cases, outworn its usefulness.

Although the cases do not always articulate the distinction, dedication may be measured by metes and bounds (cf. *California Water & Tel Co.* v. *Public Util. Com., supra,* 51 Cal.2d 478), by distances and routes (cf. *Atchison etc. Ry. Co.* v. *Railroad Com., supra,* 173 Cal. 577), by the nature of the service rendered (cf. *Pacific Tel. etc. Co.* v. *Eshleman, supra,* 166 Cal. 640), by the extent of the service rendered (cf. *Del Mar Water etc. Co.* v. *Eshleman, supra,* 167 Cal. 666), and by a myriad of other conceivable yardsticks. The various indicia of dedication are not uniformly applicable to different utilities nor uniformly useful in answering different questions. Greyhound cannot seriously contend that all carriers serve by "strips of land," as some railroads do. The reasons for limiting railroads to strips of land—the cost of right of way and expense of trackage—are obviously not applicable to carriers using intrastate waters, airspace, or highways. The commission's power would be frustrated and commerce paralyzed if dissatisfied carriers could refuse to serve each time highway conditions necessitated a detour from a narrow strip claimed as the limit of dedication and obligation.

Regardless of peculiar service configurations, the scope of dedication is not determined by mechanical formulas but ultimately by the fact that the utility has dedicated its resources to a particular enterprise, venture, or undertaking. And cases treating utilities of diverse natures have so recognized. (See, e.g., *Pacific Tel. etc. Co.* v. *Eshleman, supra,* 166 Cal. 640, 699 ("The purveyor of a public service . . . is not bound to undertake a service different from that which he has professed to render. . . .") (concurring opinion); *Atchison etc. Ry. Co.* v. *Railroad Com., supra,* 173 Cal. 577, 588 ("The question whether a railroad company shall extend its lines . . . shall

engage in a new and additional enterprise, is one of policy to be determined by its directors [and not by the Railroad Commission]."); *Hollywood Chamber of Commerce* v. *Railroad Com., supra,* 192 Cal. 307, 311-312 ("[A] public utility cannot be required to dedicate its property to a new and additional enterprise not theretofore undertaken by it, . . ."); *California Water & Tel. Co.* v. *Public Util. Com., supra,* 51 Cal.2d 478, 494-495 (discussion of absence of acts indicating an undertaking); cf., e.g., *Pinney & Boyle Co.* v. *Los Angeles Gas etc. Corp.,* 168 Cal. 12, 14 [141 P. 620, Ann. Cas. 1915D 471, L.R.A. 1915C 282] ("It is the duty which the purveyor or producer has undertaken to perform on behalf of and so owes to the public generally . . . which stamps the purveyor or the agency as being a public service utility."); *Producers Transp. Co.* v. *Railroad Com.,* 176 Cal. 499, 504 [169 P. 59], affd. 251 U.S. 228 [64 L.Ed. 239, 40 S.Ct. 131] ("[P]etitioner . . . voluntarily assumed the duty of and embarked upon the business. . . . [P]etitioner has voluntarily devoted its property to a public use. . . ."); *S. Edwards Associates* v. *Railroad Com.,* 196 Cal. 62, 70 [235 P. 647] ("The test to be applied . . . is whether or not those offering the service have expressly or impliedly held themselves out as engaging in the business of supplying the water. . . ."); and see *Utica Transit Corp.* v. *Feinberg* (1950) 277 App.Div. 464 [100 N.Y.S.2d 916, 920] ("[T]he extension directed was not a new venture, . . ."); Note, *The Duty of a Public Utility to Render Adequate Service: Its Scope and Enforcement* (1962) 62 Colum.L.Rev. 312, 314-319.) ▉ Applying this standard, the decisive question in this controversy is whether Greyhound has dedicated its resources to the enterprise or venture of providing commutation facilities to the populace to be served under the order.[5]

▉ The commission's findings reveal that Greyhound provides commuter bus service between San Francisco and Oakland on the one hand, and Walnut Creek and Concord on the other. The service ordered over Ignacio Valley Road involves a minor rerouting of commuter service adding

---

[5]Accordingly, the question whether the commission has previously interpreted the language of section 1032 broadly to include territories or narrowly to include only routes is not germane to the issue to be decided. Neither is the fact that the proposed operations will be conducted at a loss material because, as the commission found, Greyhound's fares outside the commute areas are set at a level sufficiently high to offset losses within the commute areas.

approximately one mile to the present route to Concord, and requires no additional buses. This substitution of routes is needed to better serve the influx of population along the proposed route. The commission found that Greyhound had dedicated its facilities to render the service, and that public convenience and necessity required the operations ordered. These findings were clearly correct and clearly lawful. (*Atchison etc. Ry. Co.* v. *Railroad Com, supra,* 209 Cal. 460, affd. 283 U.S. 380.)

The findings further reveal that Greyhound presently provides summer seasonal service over Skyline Boulevard, and commuter bus service between San Francisco and Daly City, and points south, over highways on either side of Skyline Boulevard. The Skyline route would require the purchase of four new buses and the transfer of three buses from existing routes. Because of difficulties of terrain, it is extremely inconvenient for the growing population along Skyline Boulevard to utilize alternate routes. The commission found that Greyhound had dedicated its facilities to render the service, and that public convenience and necessity required the operations ordered. Because Greyhound provides seasonal service to residents along Skyline Boulevard, somewhat inconveniently provides year-round peak-hour commutation service on paralleling routes to a substantial portion of the 20,000 persons living adjacent to the Skyline route, and has undertaken to provide commutation service between San Francisco and Daly City and points south, the commission's finding that Greyhound has dedicated its resources to the service ordered must be affirmed, for such operations are reasonably within the scope of the enterprise or venture of providing commutation service in the area and to the population affected.

Finally, Greyhound contends that the commission's findings with respect to the Ygnacio Valley route are defective because there is no finding that existing passenger stage carriers will not satisfactorily provide the service ordered. Section 1032 directs that the commission may issue a certificate only when existing passenger stage carriers "will not provide *such service* to the satisfaction of the commission." (Italics added.) County Transit Lines operates a localized passenger stage corporation over routes within Contra Costa County, including Ygnacio Valley Road. In its memorandum

denying rehearing, the commission opined that a finding was not necessary because County provides a dissimilar service. Greyhound is to furnish a through service over a broad area, not a local service in a limited area, and these differences are material in both fact and law. (See *Motor Transit Co.* v. *Railroad Com., supra,* 189 Cal. 573, 584-586; *Hodge Transportation System,* 24 C.R.C. 703, 709-711.) ██ ██ The findings adequately ''assist the reviewing court to ascertain the principles relied upon by the commission and to determine whether it acted arbitrarily,'' and satisfy the requirements enunciated in *Greyhound Lines, Inc.* v. *Public Utilities Com., supra,* 65 Cal.2d 811, 813. (And see *California Motor Transport Co.* v. *Public Utilities Com.,* 59 Cal.2d 270, 275 [28 Cal. Rptr. 868, 379 P.2d 324].)

The order is affirmed.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.