[S.F. No. 24418. Mar. 3, 1983.]

KENNETH CORY, as State Controller, Petitioner, v.
PUBLIC UTILITIES COMMISSION et al., Respondents;
PACIFIC TELEPHONE AND TELEGRAPH COMPANY,
Real Party in Interest.

COUNSEL

George Deukmejian, Attorney General, and Yeoryios C. Apallas, Deputy Attorney General, for Petitioner.

Janice E. Kerr, Hector Anninos and Suzanne Engelberg for Respondents.

Robert V. R. Dalenberg, James S. Hamasaki and Bruce A. Ramsey for Real Party in Interest.

OPINION

**BROUSSARD, Acting C. J.**—In this proceeding we review Decision No. 93896 of the Public Utilities Commission as modified. The decision provides that unclaimed refunds payable by Pacific Telephone and Telegraph Company (Pacific) shall be distributed pro rata to its current customers. Kenneth Cory, the Controller of the State of California, claims that the unpaid funds should be paid to the state under the Unclaimed Property Law.[1] (Code Civ. Proc., § 1500 et seq.) We agree.

After a series of decisions relating to the treatment of accelerated depreciation in the calculation of income tax expense for rate making purposes (*City of Los Angeles* v. *Public Utilities Com.* (1975) 15 Cal.3d 680 [125 Cal.Rptr. 779,

---

[1]Pacific disclaims any interest in the controversy stating it is a stakeholder.

542 P.2d 1371]; *City of Los Angeles* v. *Public Utilities Commission* (1972) 7 Cal.3d 331 [102 Cal.Rptr. 313, 497 P.2d 785]; *City and County of San Francisco* v. *Public Utilities Com.* (1971) 6 Cal.3d 119 [98 Cal.Rptr. 286, 490 P.2d 798]), the commission ordered Pacific to refund to ratepayers overcollections of approximately $381 million. The refunds to the customers were calculated on the basis of prior usage from August 1974 to February 1980 with current customers receiving credits against current bills and former customers receiving checks.

After completion of the refund plan, Pacific reported to the commission that approximately $6 million was undeliverable either because checks had been returned undelivered or checks had not been cashed.

A little more than $5 million of the refunds were not paid because checks were returned undelivered. In the decision now under review the commission found that "[r]efunding an equal amount to all customers is the most expeditious and least costly method of refunding an amount of this relatively small magnitude." The commission directed Pacific to credit the $5 million to the accounts of current customers on a pro rata basis.[2]

Over the years, the Legislature has dealt with utility refunds and refunds that are unclaimed in different ways. In 1915 when it adopted the Public Utilities Act, it provided in section 68, subdivision (d) that rate refunds must be paid to the customers who paid the overcharges and that any unclaimed amounts would escheat to the state. (Stats. 1915, ch. 91, pp. 162-163.) In 1933, the Legislature amended section 68 retaining the requirement that refunds for overcharges be paid to the customers who paid them, but deleting the escheat provision. (Stats. 1933, ch. 442, pp. 1159-1160; see *Market St. Ry. Co.* v. *Railroad Commission* (1946) 28 Cal.2d 363, 369-371 [171 Cal.Rptr. 875].)

In 1959, the Legislature passed a version of the 1954 Uniform Disposition of Unclaimed Property Act. (Stats. 1959, ch. 1809, p. 4296.) While the uniform act specifically included unclaimed utility refunds, the version enacted by California did not. The California version excluded utilities from the definition

---

[2]In its original order the commission directed that about $6 million be credited to the accounts of current customers but it subsequently modified the amount to about $5 million on rehearing to delete an amount equal to the delivered but uncashed checks and an amount due to customers who were recently located.

During the pendency of these proceedings, Pacific reported that additional customers had been located whose drafts had been returned undelivered and that some customers had been unable to cash outstanding checks because the checks are deemed out-of-date by banks. Pacific has petitioned the commission to modify its decision to permit payment to the newly located customers and to replace the out-of-date checks.

The decision under review also provides for crediting the unpaid balance of another much smaller refund.

of a business association. Utilities were therefore excluded from most provisions of the law.

In 1967 the California Law Revision Commission recommended changes in the 1959 law. One of the recommendations was that the utility exemption should be narrowed so that only *regulated* utilities would be exempt from the Unclaimed Property Law. The commission was concerned that unregulated utilities could keep unclaimed refunds whereas other types of businesses could not keep unclaimed property but were required to turn it over to the state. In this connection, the commission said that unclaimed refunds should enure to the benefit of the ratepayers rather than the utility shareholders.

In 1968 the Legislature adopted the Law Revision Commission's position. The Legislature included utilities in the definition of business associations, in effect providing that unless expressly exempt, utilities were subject to the Unclaimed Property Law. (Code Civ. Proc., § 1501, subd. (c).) It adopted an express exemption in Code of Civil Procedure section 1502 of property which would be taken into account by the Public Utilities Commission or a similar state or federal agency in setting rates for the benefit of ratepayers. (Stats. 1968, ch. 356, p. 740.)[3]

In 1976 the Legislature removed the utility exemption from the Unclaimed Property Law, deleting the provision in Code of Civil Procedure section 1502, subdivision (b) which had previously exempted unclaimed property taken into account by the Public Utilities Commission in setting rates. (See fn. 3.) Utilities remained included within the definition of business associations. Thus, all utilities were subject to the Unclaimed Property Law.

Relying on the 1967 Law Revision Commission comments, the Public Utilities Commission claims that the Unclaimed Property Law does not apply to the unclaimed refunds in the instant case because of the statement that such refunds should enure to the benefit of ratepayers. However, the Legislature in 1976, without excluding utilities from the definition of business associations, repealed the provision recommended in 1967 by the Law Revision Commission which had exempted unclaimed property to be used in calculation of utility rates. By the 1976 repeal, the Legislature manifested its intent to abandon the statutory provision reflecting the Law Revision Commission's recommendation.

---

[3]Code of Civil Procedure section 1502 provided: "(b) Except for sums payable on telegraphic money orders, this chapter does not apply to any property held by a utility which is of a type that the Public Utilities Commission of this state or a similar public agency of another state or of the United States directly or indirectly takes into consideration for the benefit of the ratepayers in determining the rates to be charged by the utility."

■ There presently being no utility exemption in the Unclaimed Property Law, its provisions are sufficiently broad to encompass utility refunds of over-collections. Code of Civil Procedure section 1510 set forth the conditions under which property will escheat to the state. The specific types of property are listed in Code of Civil Procedure sections 1513-1528. Among the types of property covered are bank deposits (§ 1513), sums payable on travelers checks, money orders and other instruments (§ 1513), contents of safe deposits (§ 1514), monies payable on insurance policies (§ 1515), and corporate dividends (§ 1516).

Code of Civil Procedure section 1518 provides in part: "(a) All tangible personal property located in this state and, subject to Section 1510, all intangible personal property, and the income or increment on such tangible or intangible property, held in a *fiduciary capacity* for the benefit of another person escheats to this state if after it becomes payable or distributable, the owner has not, within a period of seven years, increased or decreased the principal, accepted payment of principal or income, corresponded in writing concerning the property, or otherwise indicated an interest as evidenced by a memorandum or other record on file with the fiduciary." (Italics added.)

Section 1520 of that code provides: "All tangible personal property located in this state and, subject to Section 1510, all intangible personal property, except property of the classes mentioned in Sections 1511, 1513, 1514, 1515, 1516, 1517, 1518, 1519, and 1521, including any income or increment thereon and deducting any lawful charges, that is held or owing in the ordinary course of the holder's business and has remained unclaimed by the owner for more than seven years after it became payable or distributable escheats to this state. [¶] For purposes of this section, 'lawful charges' means charges which are specifically authorized by statute, other than the Unclaimed Property Law, or by a valid, enforceable contract."

We need not decide whether the unclaimed checks come within the provisions of section 1518. If they do not, they would come within the catchall provisions of section 1520. It is not claimed that the provisions of section 1510 are inapplicable and refunds of overcollections are owing in the ordinary course of Pacific's business. (See *Blue Cross of Northern California* v. *Cory* (1981) 120 Cal.App.3d 723, 735-736 [174 Cal.Rptr. 901] [money for un-cashed medical benefit checks].)

The commission claims that under Public Utilities Code section 453.5 it is authorized to pay the unclaimed refunds to current customers and that as a specific statute dealing with utility refunds the section takes precedence over the escheat statutes.

Public Utilities Code section 453.5 provides: "Whenever the commission orders rate refunds to be distributed, the commission shall require public utilities to pay refunds to all current utility customers, and, when practicable, to prior customers, on an equitable pro rata basis without regard as to whether or not the customer is classifiable as a residential or commercial tenant, landlord, homeowner, business, industrial, educational, governmental, nonprofit, agricultural, or any other type of entity. [¶] For the purposes of this section 'equitable pro rata basis' shall mean in proportion to the amount originally paid for the utility service involved, or in proportion to the amount of such utility service actually received. [¶] Nothing in this section shall prevent the commission from authorizing refunds to residential and other small customers to be based on current usage." Section 453.5 was enacted in 1977. (Stats. 1977, ch. 897, p. 2746.)

We considered section 453.5 in *California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836 [157 Cal.Rptr. 676, 598 P.2d 836]. Pursuant to orders of the Federal Power Commission, utilities received rebates from their interstate natural gas suppliers for overcharges in earlier years, and the commission applied the rebates to the utilities' gas balancing account. The gas balancing accounts are used to prevent excessive profits or losses which might arise because rates are based on estimated gas costs and the actual costs may vary widely. Rates in the near future are then adjusted to reflect the differences in the estimated and actual costs of the utilities. Some large users who had paid rates based on the overcharges and who had since instituted conservation measures would be prejudiced by applying the rebates to balancing accounts to reduce future rates rather than to refund them on the basis of past usage. We held that application of the rebates to the balancing account was improper and that the rebates should be distributed in accordance with section 453.5.

Where the section applies, " 'refunds' which are ordered 'distributed' by the commission must be allocated according to the statutory formula; *present* customers (except for small residential users) must be compensated *on the basis of their prior usage* to which the refund corresponds, and, where practical, *prior* customers must also participate *to the extent of the overcharges which they previously paid.*" (24 Cal.3d at p. 842; italics in original.) The court reasoned that refunds of rebates are ordered by the commission "to be 'distributed' whenever it directs their final disposition, thereby dividing and apportioning them." (24 Cal.3d at p. 848.) We also noted that the "*general* feasibility of reimbursing many [present and prior] customers in strict accordance with their actual overpayments is demonstrated by past refund plans." (24 Cal.3d at p. 848-849; italics in original.)

Section 453.5 does not authorize the commission's order to pay the unclaimed refunds to current customers. The section authorizes refund orders; it

does not deal with unclaimed property. The words "when practicable" obviously mean that the commission shall determine whether it is practicable to refund to prior customers. It determined that it was practicable to refund to prior customers when it ordered the refunds. As stated in *California Mfrs. Assn.* v. *Public Utilities Com.*, *supra*, 24 Cal.3d 836, 848, the commission orders the refunds to be distributed "whenever it directs their final disposition thereby dividing and apportioning them." There is nothing in the section indicating that the commission having ordered the refunds is authorized to subsequently repudiate the property rights of unlocated former customers, declare a forfeiture, and provide a windfall for current customers who have already received the full refund to which they are entitled under section 453.5.

While the Legislature originally dealt with both refunds and unclaimed refunds in the public utilities law, it subsequently dealt with refunds in the Public Utilities Code and unclaimed property held by utilities in the Unclaimed Property Law. The statutory history discussed above is clear. The Legislature first provided for escheat of unclaimed property held by utilities, next provided for total exemption from the escheat statute of all unclaimed property held by utilities, then provided for exemption only if the property would be taken into consideration by a regulatory agency in calculation of rates, and finally repealed the limited exemption. The history reflects a legislative intent that unclaimed property held by utilities should come within the Unclaimed Property Law and, under Code of Civil Procedure sections 1518 and 1520, that unclaimed utility refunds should come within the law.

The purposes of the Unclaimed Property Law are to protect unknown owners by locating them and restoring their property and to give the state the benefit of the use of it. (*Douglas Aircraft Co.* v. *Cranston* (1962) 58 Cal.2d 462, 463 [24 Cal.Rptr. 851, 374 P.2d 819, 98 A.L.R.2d 298].) The Controller states that during the last few years his efforts to locate the true owners have been successful in returning to them approximately 50 percent of the property turned over to him. The commission is not authorized to forfeit the refunds of the unlocated customers, and the property should be held for the benefit of the unlocated customers and for the use of the state in accordance with the Unclaimed Property Law. There is no more reason to allocate the unclaimed rate refunds to current telephone customers than there would be for a bank to allocate unclaimed property to its current customers.

The decision is annulled.

Mosk, J., Richardson, J., Kaus, J., Rouse, J.,* and Newsom, J.,* concurred.

---

*Assigned by the Acting Chairperson of the Judicial Council.

**REYNOSO, J.**—I respectfully dissent. The majority bases its decision almost exclusively upon its construction of Code of Civil Procedure section 1500 et seq., the Unclaimed Property Law (UPL). It draws a careful history of the legislation and analyzes it closely but in a virtual vacuum. Consequently, the majority arrives at a reasonable but unpersuasive result. The Public Utilities Commission (Commission), in my view, acted within its power in designing a plan which protected Pacific Telephone and Telegraph Company's (Pacific) customers.

The Commission stands nearly alone among state agencies as a constitutionally empowered, independent, multifunctioned body whose mandate is to represent and protect the public good. (See Comment (1965) 38 So.Cal.L.Rev. 144.) The Legislature codified the range of Commission power when it authorized it to "do all things necessary and convenient" in regulating "every public utility in the State." (Pub. Util. Code, § 701.) The extent of the Commission's authority evinces the Legislature's concern that utilities exert virtually monopolistic control over necessary services and therefore require close monitoring. (Arnebergh, *Public Utilities Regulation and the Community Interest* (1957) 30 So.Cal.L.Rev. 191.) Consistently, this court has construed the Legislature's intent likewise, finding the Commission's duties, functions and powers to be far reaching. (*Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891, 905 [160 Cal.Rptr. 124, 603 P.2d 41]; *People* v. *Superior Court* (1965) 62 Cal.2d 515, 518 [42 Cal.Rptr. 849, 399 P.2d 385].) The Commission's broad discretion, then, is rooted in the Constitution and legislative scheme which has been affirmed by this court.

The Commission has been vested with particular authority: its factual findings will be presumed final; its legal findings may be appealed, but only to this court. (Pub. Util. Code, § 1756.) Our review is limited in that we can overrule a Commission's finding of law only if it violates a petitioner's constitutional right (Pub. Util. Code, § 1757) or "fails to bear a reasonable relation to statutory purposes and language." (*Greyhound Lines, Inc.* v. *Public Utilities Com.* (1968) 68 Cal.2d 406, 410 [67 Cal.Rptr. 97, 438 P.2d 801].) This limited power of review, coupled with the clear mandate in Public Utilities Code section 701 giving the Commission wide discretionary powers to regulate public utilities, goes to the heart of the controversy in the instant case. Here the Controller has the substantial burden of showing the Commission's error before this court can properly set aside the Commission's procedure. The Controller fails.

All parties agree that the Commission's initial order requiring Pacific to refund nearly $381 million to its customers who received services between 1974 and 1980 complied with Public Utilities Code section 453.5. Current customers who were customers during those years simply received their refund in the form of a credit. Pacific tried to locate former customers and gave refunds in

the form of drafts. Those who remain unreimbursed are former customers Pacific was unable to locate. Apparently, some of those persons have since died, moved elsewhere without leaving a forwarding address, or moved into other households. There is nothing in the record to indicate a lack of diligence or good faith on Pacific's part.

Having acknowledged the Commission's broad authority, we now analyze its reading of section 453.3. The provision was added in 1977 in order to identify the proper recipients of refunds based on utility overcharges: customers are to be reimbursed as fairly as possible. Section 453.5 protects all current utility customers and former customers when practicable. In the instant case, the Commission found that the requirement had been sastified by Pacific's efforts and proposed a second distribution to current customers only when Pacific reported that more than $5 million remained undistributed. The Commission's reading of section 453.5 is not the only possible reading in this case, but it is reasonable.

The Controller argues that the UPL protects the interests of the absent property owners. I agree. The Controller further insists that reading the UPL and section 453.5 *must* result in the unclaimed monies being escheated to the state, because utility refunds are no longer exempt from the UPL. In arguing for application of section 453.5, on the other hand, the Commission notes that specific statutes control general statutes, which is ordinarily the rule. (*Cohn* v. *Isensee* (1920) 45 Cal.App. 531, 536 [188 P. 279].) Both statutes deal with the disposition of funds not in the hands of the rightful owner. The purpose of each is consumer protection. Given this common ground, this court ought to harmonize the statutes (*Long Beach City School Dist.* v. *Payne* (1933) 219 Cal. 598, 605 [28 P.2d 663]), which the majority fails to do. Harmonizing statutory provisions which appear to be antagonistic requires a look at the purpose of each statutory scheme. Here we must begin by recognizing the Commission's broad powers to regulate telephone use and protect customers. Then we must ask whether the Commission has abused its power or violated the UPL.

First, a careful reading of the UPL shows that a primary purpose is to prevent windfalls to holders of unclaimed property who are not rightful owners. Here Pacific is the holder of the unclaimed property. It stands to gain no windfall, however, because it is asserting no interest in keeping the money. Therefore, the Commission's plan does not evade this important UPL purpose.

Second, the UPL authorizes the unclaimed property to inure to the state for safe keeping until the rightful owner claims it. In effect, the state uses the money, knowing that historically no more than 50 percent of the absent owners ever claim their property. (Majority opn., *ante* at p. 528.) The question becomes whether the state is the appropriate recipient of a portion of monies

which Pacific's customers were overcharged; that is, whether the Commission abused its power in ordering a second credit which includes all overcharges and will benefit present customers. Current customers have a direct relationship to Pacific, whereas general taxpayers as a class, and the state itself, have none. Consequently, the group that section 453.5 intends to protect is the group that would benefit from the Commission's plan.

Finally, we add a purely practical observation. The Controller contends that current customers stand to gain a windfall (of approximately 65 cents each) by receiving the absent customers' refunds. However, with utilities there is never an exact correlation between payments and services. Customers regularly pay for utility improvements which will not be available for years.

I am unwilling to argue that the Commission's discretion is boundless. A different plan, or a different factual situation, could mandate a different result. If, for example, $10,000 were owed each customer there is little question that a Commission plan contrary to the UPL would be an abuse of discretion. The record before us, however, presents a picture of the Commission's reasonable, systematic approach fashioned to protect current and past Pacific customers. Our duty ends when we determine that the Commission operated within its broad discretionary power.

The Commission chose a procedure which was designed to benefit Pacific's customers. I believe it has operated under the requirements of Public Utilities Code section 453.5 and within the goals of the UPL. Therefore, I believe the Commission's plan should be affirmed.