[No. B166993. Second Dist., Div. Eight. Apr. 19, 2004.]

SOUTHERN CALIFORNIA EDISON COMPANY, Petitioner, v.
PUBLIC UTILITIES COMMISSION, Respondent;
THE UTILITY REFORM NETWORK, Real Party in Interest.

## Counsel

Stephen E. Pickett, Frank Cooley and Laura Genao for Petitioner.

Roger J. Peters, Christopher J. Warner and Ann H. Kim for Pacific Gas and Electric Company as Amicus Curiae on behalf of Petitioner.

Lionel B. Wilson, Mary F. McKenzie, Joel T. Perlstein and Ourania M. Vlahos for Respondent.

Harvey Rosenfield and Pamela M. Pressley for Foundation for Taxpayer and Consumer Rights as Amicus Curiae on behalf of Respondent.

Michael Shames and Lee Biddle for Utility Consumers' Action Network as Amicus Curiae on behalf of Respondent.

Richard Rothschild and Robert Newman for Western Center on Law & Poverty as Amicus Curiae on behalf of Respondent.

Strumwasser & Woocher, Michael J. Strumwasser, Fredric D. Woocher, Becky L. Monroe; and Robert E. Finkelstein for Real Party in Interest.

## OPINION

**COOPER, P. J.**—In 1984, the Legislature added various provisions to the Public Utilities Code, authorizing the California Public Utilities Commission (PUC) to award compensation "for reasonable advocate's fees, reasonable expert witness fees, and other reasonable costs" (Pub. Util. Code, § 1801) to utility customers who participate in PUC proceedings.[1] In doing so, the Legislature directed that the provisions be "administered in a manner that encourages the effective and efficient participation [in PUC proceedings] of all groups that have a stake in the public utility regulation process." (§ 1801.3, subd. (b).) To promote such participation, the Legislature authorized the PUC to compensate customers, not only for their work before the PUC, but also for "the fees and costs . . . of obtaining judicial review" following a decision of the PUC. (§ 1802, subd. (a).)

We issued a writ of review to consider a challenge by Southern California Edison Company (SCE) to an award of compensation under the Intervenor Compensation Provisions. The PUC awarded the compensation to The Utility Reform Network (TURN), a nonprofit consumer advocacy organization that actively participated in extensive PUC proceedings involving complex rate-making issues. Approximately $256,000 of the total award was compensation for work TURN performed in federal lawsuits initiated by SCE and another utility in an effort to overturn the PUC decisions in which TURN had participated. SCE claims compensation for TURN's federal court work is not authorized by the Intervenor Compensation Provisions.

The PUC concluded TURN's federal court work was compensable as work associated with "obtaining judicial review" as provided for in section 1802, subdivision (a). The PUC explained that interpreting the judicial review language to provide for compensation when a customer intervenes in a judicial proceeding to defend a PUC decision is consistent with the Legislature's stated goal of encouraging effective and efficient participation by customers in the utility regulation process. The PUC observed that "[i]f an

---

[1] The provisions added to the Public Utilities Code in 1984 are contained in sections 1801–1808. In 1992, the Legislature added section 1812. We refer to these provisions, which make up article 5 of chapter 9, part 1, division 1 of the Public Utilities Code, as the Intervenor Compensation Provisions.

As used in the Intervenor Compensation Provisions, "customer" includes groups representing consumer interests. (Pub. Util. Code, § 1802, subd. (b).)

All undesignated statutory references are to the Public Utilities Code.

intervenor cannot gain compensation to defend a Commission decision in which the intervenor prevailed, the intervenor's effectiveness is severely limited."

Bearing in mind that the "PUC's interpretation of the Public Utility Code 'should not be disturbed unless it fails to bear a reasonable relation to statutory purposes and language' " (*Southern California Edison Co. v. Peevey* (2003) 31 Cal.4th 781, 796 [3 Cal.Rptr.3d 703, 74 P.3d 795] (*SCE v. Peevey*), quoting *Greyhound Lines, Inc. v. Public Utilities Com.* (1968) 68 Cal.2d 406, 410–411 [67 Cal.Rptr. 97, 438 P.2d 801]), we affirm.

## FACTUAL AND PROCEDURAL HISTORY

The PUC proceedings giving rise to the compensation award at issue here arose out of California's attempt to deregulate the market for electrical power.[2] These efforts produced Assembly Bill No. 1890 (1995–1996 Reg. Sess.), which became law in 1996 (Stats. 1996, ch. 854) and provided for a transition to a competitive electricity market at the end of a transition period ending no later than March 31, 2002. The law also provided for the state's main electric utility companies, including SCE, to divest themselves of substantial parts of their generating assets. To give the utilities an opportunity to recover their investments in these assets (known as "stranded" or "transition" costs), the Legislature froze retail electricity rates (with some exceptions) during the transition period. (See §§ 330, 367, 368).)

In 1999, SCE, Pacific Gas and Electric Company (PG&E), and San Diego Gas and Electric Company filed applications in the PUC, proposing certain methods for determining the end of the transition period and subsequent ratemaking mechanisms. (The PUC's proceedings on these applications are known as the "Post-Transition Ratemaking" (PTR) proceedings.) The PUC issued a decision in October 1999 which, among other things, prohibited the utilities from carrying over and recovering after the rate freeze period any uneconomic costs that they had not recovered during the rate freeze. PG&E petitioned the PUC for rehearing, which issued a decision in March 2000, denying rehearing but making some modifications to the original decision. TURN actively participated in these proceedings.[3]

---

[2] Because the substantive aspects of the proceedings discussed below are not particularly relevant to the legal issue before us, we focus primarily on the procedural history of the case. Additional information regarding some of the substantive aspects of the case can be found in *SCE v. Peevey, supra,* 31 Cal.4th at pages 787–792, *Southern California Edison Co. v. Lynch* (9th Cir. 2002) 307 F.3d 794, 800–802, and *Pacific Gas and Electric Co. v. Lynch* (N.D.Cal. 2002) 216 F.Supp.2d 1016, 1019–1024, cases which arose out of some of the same PUC proceedings.

[3] After the PUC denied rehearing, PG&E unsuccessfully petitioned the Court of Appeal and then the Supreme Court for review. TURN opposed PG&E's Supreme Court petition and was awarded compensation for its efforts.

In the summer of 2000, wholesale electricity rates increased dramatically. In October of that year, SCE and PG&E petitioned the PUC to modify its prior decisions in the PTR docket and allow for post-rate-freeze recovery of certain costs they had not recovered during the rate freeze period. That same month, TURN filed an application in which it proposed a change in the accounting method for determining the utilities' costs. The PUC consolidated these matters. It ultimately issued a decision in March 2001, granting the utilities some rate relief and also adopting TURN's accounting proposal.

Meanwhile, in November 2000, SCE and PG&E filed separate federal court actions (in Los Angeles and San Francisco, respectively) against the commissioners of the PUC, challenging the PUC's jurisdiction to enter their ratemaking decisions. In early 2001, TURN successfully moved to intervene in both federal actions and actively participated in those proceedings on the side of the PUC. After TURN's intervention, the district court presiding over SCE's action denied SCE's request for a preliminary injunction, and the district court presiding over PG&E's action denied motions by all parties for summary judgment.[4]

In February 2001, TURN filed with the PUC a notice of intent to claim compensation for its participation in some of the PUC proceedings discussed above. In July 2001, TURN filed its request for compensation, seeking approximately $642,000 for its work, including its work in the federal court actions initiated by SCE and PG&E.

In March 2002, an administrative law judge (ALJ) issued a draft decision awarding TURN approximately $574,000 for its contributions, which included compensation for TURN's involvement in the federal court actions. The ALJ's draft decision rejected the utilities' contention that TURN was not entitled to compensation for its involvement in the federal court proceedings. The ALJ concluded TURN had made a substantial contribution to PUC proceedings by participating in the federal court proceedings, noting that if the utilities had succeeded in their federal court actions, the "outcome would have prevented the Commission from ever reaching the issues raised by TURN in its petition for modification [filed in one of the PUC's proceedings]."

---

[4] SCE ultimately settled its action against the commissioners of the PUC. The district court approved the settlement and TURN appealed. The Ninth Circuit affirmed in part, but it also certified several questions to our Supreme Court, which the court answered in *SCE v. Peevey, supra,* 31 Cal.4th 781.

Amici curiae who filed a brief in support of the PUC in this writ proceeding urge us to consider these developments in the SCE federal action, even though they occurred after TURN made its request for compensation and were not part of the record considered by the PUC when it made its decision. We decline to do so. The PUC did not consider these developments, and we do not believe they bear on the issue before us.

Pursuant to the PUC's Rules of Practice and Procedure, SCE filed comments to the ALJ's draft decision, claiming TURN was not entitled to compensation for its federal court work because such compensation is not authorized by the Intervenor Compensation Provisions.

In June 2002, a five-member PUC panel issued a decision awarding TURN approximately $573,000 in compensation, including approximately $256,000 for its federal court work. In the decision, the PUC offered two independent rationales for awarding TURN compensation for its federal court work. First, the PUC concluded such compensation could be awarded under section 1803, which provides in pertinent part that "[t]he commission shall award reasonable advocate's fees, reasonable expert witness fees, and other reasonable costs of preparation for and participation in a *hearing* or proceeding . . . ." (Italics added.) The PUC concluded that the term "hearing," which is not defined in the Public Utilities Code, should be interpreted to include participation in hearings before other entities, not just before the PUC.

Second, the PUC concluded TURN was entitled to compensation for its federal court work under section 1802, subdivision (a), because the costs TURN incurred were associated with obtaining judicial review.

SCE applied to the PUC for rehearing, challenging both rationales offered by the PUC for its award of compensation for TURN's federal court work.

In April 2003, the PUC issued a decision denying rehearing, but substantially modifying its original decision. The PUC determined it was not necessary to rely on section 1803 and deleted the discussion concerning this section from the original decision. Instead, the PUC focused on the "judicial review" language of section 1802, subdivision (a), as the basis for its award. The PUC explained that it did "not interpret the phrase 'obtaining judicial review' in Section 1802(a) to provide compensation only when an intervenor initiates judicial review. Once judicial review is initiated, all parties that participate in the process are seeking to 'obtain' judicial review in their favor. Thus, an intervenor can obtain judicial review not just by succeeding when it initiates judicial review to challenge a Commission decision, but also when the intervenor successfully defends a Commission decision against a challenge. Again, this interpretation is buttressed by the legislative mandate to interpret the statutory provisions to encourage effective intervenor participation. (Section 1801.3(b)). If an intervenor cannot gain compensation to defend a Commission decision in which the intervenor prevailed, the intervenor's effectiveness is severely limited."

The PUC also emphasized the importance of TURN's federal court efforts: "TURN's participation in the federal court forum was helpful in protecting

the Commission's authority to act as it eventually did . . . . In this way, TURN's federal court actions significantly contributed to TURN's ability to make its substantial contribution to 'the eventual decision in this matter.' The federal court litigation was an essential component of these consolidated proceedings and the Commission decisions that are the subject of TURN's compensation request. As such, TURN could not practically or effectively advocate its position before the Commission without first helping to overcome utility litigation intended to prevent the Commission from acting on the very points TURN was seeking to raise at the Commission."

SCE filed a timely petition for a writ of review (§ 1756, subd. (a)), challenging the compensation award to the extent it included compensation for TURN's federal court work. The PUC and TURN filed separate answers opposing SCE's position.

We issued a writ of review to consider SCE's contentions on the merits. After receiving the certified record from the PUC, we received two amicus curiae briefs—one by the Foundation for Taxpayer and Consumer Rights, the Utility Consumers' Action Network, and the Western Center on Law & Poverty (collectively the PUC's amici curiae) in support of the PUC, and another by PG&E in support of SCE.[5] We also received various responses to the amicus curiae briefs and heard oral argument.

## DISCUSSION

1. *Standard of Review.*

While the proper interpretation of a statute is a question of law (*Wang v. Massey Chevrolet* (2002) 97 Cal.App.4th 856, 868 [118 Cal.Rptr.2d 770]), we are mindful that the "PUC's interpretation of the Public Utility Code 'should not be disturbed unless it fails to bear a reasonable relation to statutory purposes and language' " (*SCE v. Peevey, supra*, 31 Cal.4th at p. 796, quoting *Greyhound Lines, Inc. v. Public Utilities Com., supra*, 68 Cal.2d at pp. 410–411).

---

[5] Concurrently with their brief, the PUC's amici curiae filed a request that we judicially notice certain documents from the legislative history of the Intervenor Compensation Provisions. We have received no opposition to the request and we grant it (Evid. Code, §§ 452, 459), except insofar as it asks for judicial notice of a Los Angeles Times article by Assemblywoman Gwen Moore (see *Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062 [48 Cal.Rptr.2d 1, 906 P.2d 1057] ["statements of an individual legislator, including the author of a bill, are generally not considered in construing a statute, as the court's task is to ascertain the intent of the Legislature as a whole in adopting a piece of legislation"]).

### 2. *The Intervenor Compensation Provisions.*

The Legislature enacted the Intervenor Compensation Provisions in 1984 and they became effective on January 1, 1985.[6] (See Stats. 1985, ch. 297, § 2, pp. 374–377.) The Legislature declared that the purpose of the Intervenor Compensation provisions "is to provide compensation for reasonable advocate's fees, reasonable expert witness fees, and other reasonable costs to public utility customers of participation or intervention in any proceeding of the commission." (§ 1801.) The provisions "apply to all formal proceedings of the commission involving electric, gas, water, and telephone utilities" and are to be "administered in a manner that encourages the effective and efficient participation of all groups that have a stake in the public utility regulation process." (§ 1801.3, subds. (a), (b).)

The Legislature declared its intent that "[i]ntervenors be compensated for making a *substantial contribution* to proceedings of the commission, as determined by the commission in its orders and decisions." (§ 1801.3, subd. (d), italics added.)

Section 1803 specifies the conditions for an award of compensation:

"The commission shall award reasonable advocate's fees, reasonable expert witness fees, and other reasonable costs of preparation for and participation in a hearing or proceeding to any customer who complies with Section 1804 and satisfies both of the following requirements:[7]

"(a) The customer's presentation makes a *substantial contribution* to the adoption, in whole or in part, of the commission's order or decision.

"(b) Participation or intervention without an award of fees or costs imposes a significant financial hardship." (Italics added.)

" 'Substantial contribution' means that, in the judgment of the commission, the customer's presentation has substantially assisted the commission in the making of its order or decision because the order or decision has adopted in whole or in part one or more factual contentions, legal contentions, or

---

[6] The legislation was passed after several utilities initiated court challenges to rules the PUC had adopted in 1983, which provided for the award of "public participation costs," including attorney and expert witness fees, to deserving intervenors in regulatory and ratemaking proceedings. After the legislation became effective, the Supreme Court dismissed as moot petitions for review by three utilities which had challenged the PUC's rules. (*Southern Cal. Gas Co. v. Public Utilities Com.* (1985) 38 Cal.3d 64 [211 Cal.Rptr. 99, 695 P.2d 186].)

[7] Section 1804 specifies the procedures that apply in the intervenor compensation process, beginning with the customer's notice of intent to claim compensation and ending with the PUC's decision.

specific policy or procedural recommendations presented by the customer. Where the customer's participation has resulted in a substantial contribution, even if the decision adopts that customer's contention or recommendations only in part, the commission may award the customer compensation for all reasonable advocate's fees, reasonable expert fees, and other reasonable costs incurred by the customer in preparing or presenting that contention or recommendation." (§ 1802, subd. (h).)

As reflected in the provisions discussed above, the Legislature sought to encourage customers to participate in PUC proceedings and contribute to PUC decisions. The Legislature recognized, however, that a decision by the PUC is not necessarily the final word on a matter, and it saw fit to assist customers who wished to continue advocating their positions after the PUC has issued a decision. Therefore, it defined "compensation" as "payment for all or part, as determined by the commission, of reasonable advocate's fees, reasonable expert witness fees, and other reasonable costs of preparation for and participation in a proceeding, and includes the fees and costs of obtaining an award under this article and of *obtaining judicial review*, if any."[8] (§ 1802, subd. (a), italics added.)

### 3. *TURN Was Entitled to Compensation for Its Federal Court Efforts.*

#### a. *The PUC's construction of the judicial review clause is reasonable and is consistent with the statutory purpose of promoting effective customer participation in the public utility regulation process.*

"As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.]" (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129], original ellipses, fourth and sixth brackets in original.)

---

[8] The original version of the senate bill that contained the Intervenor Compensation Provisions (Sen. Bill No. 4 (1983–1984 Reg. Sess.)) specifically excluded the costs of obtaining judicial review from the definition of "compensation." However, the phrase "does not include the fees and costs of obtaining judicial review" was replaced with "includes the fees and costs of obtaining judicial review" in the conference committee.

In this case, however, we must also consider and afford considerable deference to the PUC's interpretation of the statute because, as noted above, the "PUC's interpretation of the Public Utility Code 'should not be disturbed unless it fails to bear a reasonable relation to statutory purposes and language.' " (*SCE v. Peevey, supra*, 31 Cal.4th at p. 796, quoting *Greyhound Lines, Inc. v. Public Utilities Com., supra*, 68 Cal.2d at pp. 410–411).[9]

SCE claims the award to TURN for its federal court work was improper because TURN was not "obtaining judicial review" under subdivision (a) of section 1802 when it intervened in the federal court actions filed by SCE and PG&E. According to SCE, only a customer who initiates a proceeding in a judicial forum is engaged in the process of obtaining judicial review.

The PUC rejected SCE's narrow construction of the phrase "obtaining judicial review." The PUC explained that "[o]nce judicial review is initiated, all parties that participate in the process are seeking to 'obtain' judicial review in their favor. Thus, an intervenor can obtain judicial review not just by succeeding when it initiates judicial review to challenge a Commission decision, but also when the intervenor successfully defends a Commission decision against a challenge."

■ We cannot say that this construction bears no "reasonable relation to statutory purposes and language." (*SCE v. Peevey, supra*, 31 Cal.4th at p. 796.) In seeking to intervene in the federal court actions, TURN was seeking to ensure that its views concerning the issues would be fully considered (i.e., reviewed) by the courts in those actions. When the federal courts granted TURN's requests to intervene, TURN "obtained judicial review." That there would have been some form of judicial review even absent TURN's participation does not negate the fact that TURN also obtained judicial review.

Moreover, the PUC's construction of the statutory language is entirely consistent with the express statutory purpose. As the PUC explained, its "interpretation is buttressed by the legislative mandate to interpret the statutory provisions to encourage effective intervenor participation.

---

[9] SCE notes that in an earlier PUC decision in an unrelated case, the PUC commented that customers cannot obtain compensation "following their successful participation in federal proceedings." (*Toward Utility Rate Normalization v. Pacific Bell* (1997) 72 Cal.P.U.C.2d 799, 800.) Because entitlement to intervenor compensation was not at issue in the case, the PUC's casual comment was mere dicta. In any event, it was not binding on the PUC in subsequent cases. (See *Hudson v. Board of Administration* (1997) 59 Cal.App.4th 1310, 1326 [69 Cal.Rptr.2d 737].)

(§ 1801.3(b)). If an intervenor cannot gain compensation to defend a Commission decision in which the intervenor prevailed, the intervenor's effectiveness is severely limited."[10]

SCE seeks support for its position from the fact that, when the Legislature was considering amendments to the Intervenor Compensation Provisions in 1992, an early draft of the bill included language that would have defined "compensation" to include compensation for fees and expenses incurred "in a court of law considering a decision or proceeding of the commission, whether on appeal or otherwise," but that language was ultimately not included in the final bill.

However, SCE offers nothing reflecting on the reason why the language was later omitted from the bill. "The deleted language might equally have been intended to clarify existing law. 'We can rarely determine from the failure of the Legislature to pass a particular bill what the intent of the Legislature is with respect to existing law. "As evidences of legislative intent they [unpassed bills] have little value." [Citations.]' [Citations.]" (*Lolley v. Campbell* (2002) 28 Cal.4th 367, 378–379 [121 Cal.Rptr.2d 571, 48 P.3d 1128].)

Moreover, what the Legislature may or may not have intended in 1992 when it was considering amendments to the Intervenor Compensation Provisions demonstrates nothing about what the Legislature intended in 1984 when it enacted those provisions and authorized judicial review compensation.[11] (*Lolley v. Campbell, supra,* 28 Cal.4th at p. 379; *Harry Carian Sales v. Agricultural Labor Relations Bd.* (1985) 39 Cal.3d 209, 230 [216 Cal.Rptr. 688, 703 P.2d 27].)

> b. *TURN was entitled to compensation for its federal court work notwithstanding the PUC's involvement in the cases.*

Citing section 1801.3, subdivision (f), SCE, as well as PG&E in its amicus curiae brief, claim that compensating customers who intervene to oppose a

---

[10] SCE claims the public interest will not be served by permitting compensation in cases such as this because the cost of such awards will be passed on to ratepayers. The same can be said about *any* award of intervenor compensation. We also find it somewhat ironic that SCE invokes the interests of ratepayers to support its position, while TURN represents those very ratepayers and the PUC concluded TURN had made a substantial contribution to its proceedings.

[11] In connection with its argument, SCE notes that "[w]hen courts have construed a statute and the Legislature thereafter reenacts that statute without changing its language, the Legislature is presumed to have been aware of and acquiesced in the judicial construction." (*Reese v. Wong* (2001) 93 Cal.App.4th 51, 59–60 [112 Cal.Rptr.2d 669].) Here, however, no court had construed the language in question when the 1992 amendments were considered.

utility's position in federal court is not warranted because the PUC is fully capable of defending its own position.[12]

■ The PUC's answer to SCE's writ petition in this case is evidence that it is capable of defending its position in a highly competent manner. However, in enacting the Intervenor Compensation Provisions, the Legislature recognized the importance of obtaining a customer perspective on matters before the PUC. For the very same reason, it is important that the customer perspective be fully represented when a matter shifts to a judicial forum.

Moreover, the Legislature specifically provided for compensation to customers, even if their efforts may duplicate to some extent those of the PUC. (See § 1802.5 ["Participation by a customer that materially supplements, complements, or contributes to the presentation of another party, *including the commission staff*, may be fully eligible for compensation if the participation makes a substantial contribution to a commission order or decision, consistent with Section 1801.3" (italics added)].)[13]

> c. *TURN was entitled to compensation for its federal court work, regardless whether such work made a "substantial contribution" to the PUC decisions for which compensation was sought.*

SCE claims the costs of TURN's federal court work are not compensable because the federal court work did not make a "substantial contribution" to the PUC decisions for which TURN sought compensation. Indeed, SCE claims, TURN's federal court work could not have made a substantial contribution to the PUC decisions because the federal court work was performed *after* the PUC issued those decisions.

■ It is true, as SCE notes, that the Intervenor Compensation Provisions were designed to compensate customers who make a "substantial contribution" to PUC proceedings. (§ 1801.3, subd. (d).) Indeed, making a substantial contribution is a prerequisite to an award of compensation. (§ 1803.) However, once a customer makes such a contribution to a PUC proceeding, that customer may obtain compensation for the fees and costs of obtaining

---

[12] Section 1801.3, subdivision (f), provides that it is the Legislature's intent the Intervenor Compensation Provisions "be administered in a manner that avoids unproductive or unnecessary participation that duplicates the participation of similar interests otherwise adequately represented or participation that is not necessary for a fair determination of the proceeding."

[13] Of course, before making an award, the PUC must first conclude that the fees and costs for which compensation is sought were "reasonable." (§ 1802, subd. (a).) Therefore, where a customer's presentation in court adds nothing to claims already presented, the PUC could conclude the costs incurred in connection with that presentation were not reasonable.

judicial review, regardless whether that judicial review work made a substantial contribution to the PUC proceeding. Any contrary construction would render the judicial review clause of section 1802, subdivision (a), meaningless in most cases because such review virtually always occurs *after* the PUC has issued its decision.[14]

> d. *Judicial review compensation is not limited to state court review.*

SCE also claims the Intervenor Compensation Provisions authorize compensation for judicial review only when such review is sought in state court. However, SCE cites no authority for this assertion.

As this case demonstrates, judicial review of a PUC decision may be sought in federal court (though on more limited grounds than in state court). There is nothing in the language of the Intervenor Compensation Provisions limiting judicial review compensation to instances where that review is sought in state court.[15] It was therefore not unreasonable for the PUC to conclude that compensation for federal court review was authorized.

SCE also notes that TURN voluntarily omitted compensation for federal court work from a *prior* compensation request. We fail to see, however, how TURN's decision to include or omit certain costs from a compensation request bears on the meaning of the statutory language before us. Moreover, TURN claims it omitted many hours from the compensation request to which SCE refers and most of those hours had nothing to do with federal litigation.

---

[14] To the extent SCE and PG&E were challenging in the federal actions the PUC's authority to issue the decisions it made in the PTR proceedings, one can say that TURN's federal court efforts in opposition to the utilities did make a "substantial contribution" to those decisions, even if the decisions were issued before the federal actions were filed.

We also note that the PUC's decision adopting TURN's accounting proposal was issued in March 2001, approximately five months after the federal actions were filed and a month after the federal court hearing SCE's action denied its request for a preliminary injunction. In that sense, the compensation for TURN's federal court efforts could be viewed as compensation for TURN's "costs of preparation for and participation" in the PUC proceeding considering its accounting proposal. (§ 1802, subd. (a).)

[15] SCE appears to rely on the fact that elsewhere in the Public Utilities Code, the Legislature authorized parties aggrieved by a PUC decision to file a petition for a writ of review in the California Court of Appeal or in the California Supreme Court, not in a federal court. (§ 1756.) As the PUC's amici curiae point out, however, it is not surprising the state Legislature did not presume to create a federal right of action. Moreover, there is nothing to indicate the Legislature intended judicial review compensation under the Intervenor Compensation Provisions to be limited only to compensation for the writ review provided for in section 1756.

## DISPOSITION

PUC decision 02-06-070, as modified by PUC decision 03-04-034, is affirmed.

Rubin, J., and Boland, J., concurred.