TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-611 |
| of | : | |
| | : | September 17, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____


THE HONORABLE KATHLEEN CONNELL, CONTROLLER OF THE STATE OF CALIFORNIA, has requested an opinion on the following questions:

1. Under what circumstances, if any, may the Controller of the State of California waive all or part of the interest due for the failure to report or pay or deliver unclaimed property within the time prescribed by the Unclaimed Property Law?

2. In the event there is an actual dispute as to the existence, value, or time for the reporting of unclaimed property, what procedures may the Controller of the State of California follow in order to relieve the property holder of the possible interest due for the failure to report or pay or deliver the unclaimed property?

3. Is non-cash or non-cash equivalent property subject to the interest charges which accrue for failure to report or pay or deliver unclaimed property?

CONCLUSIONS

1. The Controller of the State of California may not waive all or part of the interest due for the failure to report or pay or deliver unclaimed property within the time prescribed by the Unclaimed Property Law.

2.      In the event there is an actual dispute as to the existence, value, or time for the reporting of unclaimed property, the Controller of the State of California may after full examination enter into a settlement agreement with the property holder compromising the possible interest that might be due for the failure to report or pay or deliver the unclaimed property.

3.      Non-cash and non-cash equivalent property is subject to the interest charges which accrue for failure to report or pay or deliver unclaimed property.

## ANALYSIS

The three questions presented for resolution concern the application of several provisions of the California Unclaimed Property Law (Code Civ. Proc., §§ 1500-1582; "UPL").[1]  The UPL establishes procedures to be followed when property goes unclaimed, generally for a period of three years, and "escheats" (reverts) to the state.  Section 1530 requires that a report of escheated property be filed with the Controller of the State of California ("Controller") by holders[2] of the property.  Section 1532 requires payment or delivery of the property to the Controller when the report is filed.

The "UPL is not a true escheat statute; rather, it has dual objectives:  (1) to reunite owners with unclaimed funds or property, and (2) to give the state, rather than the holder, the benefit of the use of unclaimed funds or property."  (*Bank of America* v. *Cory* (1985) 164 Cal.App.3d 66, 74, citing *Douglas Aircraft Co.* v. *Cranston* (1962) 58 Cal.2d 462, 463; 58 Ops.Cal.Atty.Gen. 60, 63 (1975).)[3]  The state, through the Controller, acts as the protector of the rights of the true owner.  (*Cory* v. *Public Utilities Com.* (1983) 33 Cal.3d 522, 528.)[4]  "When considered in total context, the statutory scheme of the UPL compels the Controller to affirmatively take all steps necessary to carry out the purposes of the UPL.  (See § 1531.)" (*Bank of America* v. *Cory*, *supra*, 164 Cal.App.3d at 74.)

The UPL authorizes the Controller to file legal actions against property holders for failing to comply with the requirements of the UPL (§ 1572) and imposes penalties and interest in certain instances (§§ 1576, 1577).  Section 1572, subdivision (a) states:

---

[1]Hereinafter all section references are to the Code of Civil Procedure, unless otherwise indicated.

[2]A "holder" is "any person in possession of property subject to [the UPL] belonging to another or who is trustee in case of a trust, or is indebted to another on an obligation subject to [the UPL]."  (§ 1501, subd. (e).)

[3]"Since the UPL is not a true escheat statute in the historical sense, the property does not belong to the state in ownership until a permanent escheat has been accomplished, pursuant to sections 1430 and 1431." (*Bank of America* v. *Cory*, *supra*, 164 Cal.App.3d at 79.)

[4]"In connection with all unclaimed property, the Controller has all of the powers necessary in order to safeguard and conserve the interests of all parties, including the State, having any vested or expectant interest in such unclaimed property . . . ."  (§ 1365.)

"The State Controller may bring an action in a court of appropriate jurisdiction, as specified in this section, for any of the following purposes:

"(1)  To enforce the duty of any person under this chapter to permit the examination of the records of such person.

"(2)  For a judicial determination that particular property is subject to escheat by this state pursuant to this chapter.

"(3)  To enforce the delivery of any property to the State Controller as required under this chapter."

Section 1576 states:

"(a)  Any person who willfully fails to render any report or perform other duties required under this chapter shall be punished by a fine of twenty dollars ($20) for each day such report is withheld or such duty is not performed, but not more than two thousand dollars ($2,000).

"(b)  Any person who willfully refuses to pay or deliver escheated property to the State Controller as required under this chapter shall be punished by a fine of not less than one thousand dollars ($1,000) nor more than ten thousand dollars ($10,000), or imprisonment for not more than six months, or both."

Section 1577 provides:

"In addition to any damages, penalties, or fines for which a person may be liable under other provisions of law, any person who fails to report or pay or deliver unclaimed property within the time prescribed by this chapter, shall pay to the State Controller interest at the rate of 12 percent per annum on such property or value thereof from the date such property should have been paid or delivered."

In applying these provisions of the UPL to the issues presented, we may rely upon several well-established principles of statutory interpretation.  "In construing a statute a court's objective is to ascertain and effectuate the underlying legislative intent."  (*Moore* v. *California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1012.)  "In determining intent, we look first to the language of the statute, giving effect to its `plain meaning.'"  (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208-209.)  Also helpful in discerning legislative intent is "the legislative history and statutory context of the act under scrutiny."  (*Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 570.)  "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible."  (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

1.  Waiver of Interest

The first issue to be resolved is whether the Controller may waive the interest charges incurred under the provisions of section 1577.  We conclude that the Controller may not do so.

Initially, we note that section 1577 uses the mandatory term "shall" with respect to the interest payment obligation of the property holder.[5]  Looking at the legislative history of section 1577's enactment in 1976 (Stat. 1976, ch. 49, § 3), we find that the Legislative Counsel's Digest underscored the mandatory nature of the interest provision, stating in part:

> "Existing law authorizes the State Controller to recover interest on unclaimed property owing to the state following a failure to pay over such property within a prescribed time following the Controller's requisition thereof.

> "This bill would make it clear that *in all instances* where a person fails to report or pay or deliver unclaimed property within the time prescribed by the Unclaimed Property Law, such person shall be required to pay interest of 12% per annum on such unclaimed property or the value thereof from the date such property should have been paid or delivered."  (Emphasis added.)

The payment of interest by the holder of unclaimed property serves the two main objectives of the UPL.  First, it provides a disincentive for the property holder to retain the property any longer than is statutorily permitted.  It prompts the holder to exercise due diligence in meeting the reporting requirements of the UPL.  Thus, it promotes the UPL's primary purpose of reuniting an owner with his or her unclaimed property.  Additionally, it gives the state, rather than the holder, the benefit of the use of the unclaimed property, thereby fulfilling the second purpose of the UPL.

The only caveat to note is that under the terms of section 1530, the Controller may functionally reduce the amount of interest to be assessed by postponing the date on which the property holder must report and deliver the escheated property.  Subdivision (d) of section 1530 states:

> "The report shall be filed before November 1 of each year as of June 30 or fiscal year-end next preceding, but the report of life insurance corporations shall be filed before May 1 of each year as of December 31 next preceding.  The Controller may postpone the reporting date upon his or her own motion or upon written request by any person required to file a report."

Since the interest charges begin "from the date such property should have been paid or delivered" (§ 1577), and such payment or delivery date is "at the same time the report is filed" (§ 1532, subd. (a)), the postponement of the reporting date will necessarily delay when the interest charges will begin to run.

---

[5]The statutory language may not be interpreted as being "directory" rather than "mandatory."  The former term applies to statutory language imposing a certain type of duty upon a public official.  (*People* v. *McGee* (1977) 19 Cal.3d 948, 958.)  Here, the statutory mandate is directed at the holder of the unclaimed property, not a public official.

However, establishing when interest charges are to begin must be distinguished from "waiving" interest charges duly imposed by statute.

We conclude in answer to the first question that the Controller may not waive all or part of the interest due for the failure to report or pay or deliver unclaimed property within the time prescribed by the UPL.

2.  Actual Dispute

The second issue to be resolved is whether the Controller may enter into a settlement agreement with the property holder that compromises the possible liability with respect to the payment of interest when there is an actual dispute as to the existence, value, or time for the reporting of escheated property.  We conclude that the Controller, after full examination, may settle a bona fide dispute with the property holder compromising the possible interest liability.

The Controller may enter into a settlement agreement to resolve a factual or legal dispute with the property holder under conditions that would compromise the possible interest liability.  (See §§ 1365, 1572; Gov. Code, §§ 12410, 12414, 12418, 12419; 2 Ops.Cal.Atty.Gen. 360, 361-362 (1943).)  Such a settlement must be predicated upon a full examination by the Controller of the claims of the state with respect to the property (§ 1365; Gov. Code, § 12414), so that an informed and verifiable decision may be made regarding the dispute consistent with the purpose and requirements of the UPL.  (See *Cory* v. *Public Utilities Com.*, *supra*, 33 Cal.3d at 528.)

One critical element of such a settlement is that the dispute must be a bona fide one; otherwise, the settlement would violate the "gift clause" of section 6 of article XVI of the Constitution.  The constitutional clause provides:  "The Legislature shall have no . . . power to make any gift or authorize the making of any gift, or any public money or thing of value to any individual, municipal or other corporation whatever . . . ."

In *Orange County Foundation* v. *Irvine Co.* (1983) 139 Cal.App.3d 195, the court examined the circumstances under which the state may settle disputed claims.  In rejecting the defendant's argument that it had a valid claim which could be settled, the court stated:

". . . [T]he settlement of a good faith dispute between the State and a private party is an appropriate use of public funds, neither wasteful within the meaning of section 526a, not a gift barred by article XVI, section 6, because the relinquishment of a colorable legal claim in return for settlement funds paid by the State is good consideration and accomplishes a valid public purpose. . . .

". . . `"[A] promise to compromise a claim utterly unfounded will not be regarded as a valuable consideration."  [Wharton on Contracts].' (*City Street Improvement Co.* v. *Pearson* (1919) 181 Cal. 649, overruled on other grounds in *Hoffman* v. *City of Red Bluff* (1965) 63 Cal.2d 584, 583-594.) . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Compromise of a wholly invalid claim is inadequate consideration to support a contract. (*Union Collection Co.* v. *Buckman* (1907) 150 Cal. 159, 164; *City Street Imp. Co.* v. *Pearson*, *supra*, 181 Cal. 640, 649.) We hold that, when state funds are expended pursuant to a settlement agreement in exchange for the relinquishment of such a claim, no `public purpose' is achieved. Such an expenditure violates the gift clause." (*Id*., at pp. 200-201.)[6]

In 69 Ops.Cal.Atty.Gen. 147, 152 (1986), we concluded that a redevelopment agency could not pay a landowner's claim without legal authority:

". . . We view the request for payment as an `obviously worthless' and `wholly invalid' claim to which the gift of public funds prohibition is applicable. (See *County of San Diego* v. *Hammond* (1936) 6 Cal.2d 709, 720-724; *Orange County Foundation* v. *Irvine Co.* (1983) 139 Cal.App.3d 195, 201; *County of Riverside* v. *Idyllwild County Water Dist.*, *supra*, 84 Cal.App.3d 655, [660]; *Walters* v. *Calderon* (1972) 25 Cal.App.3d 863, 874; *Golden Gate Bridge etc. Dist.* v. *Leuhring*, *supra*, 4 Cal.App.3d 204, 212.)"

In *Murphy* v. *T. Rowe Price Reserve Fund, Inc.* (9th Cir. 1993) 8 F.2d 1420, 1423, the court summarized the applicable legal principles as follows:

". . . Compromise of a wholly invalid claim, one with no foundation, is not valid consideration. *Orange County Foundation for Preservation of Public Property v. Irvine Co.*, 139 Cal.App.3d 195, 201, 188 Cal.Rptr. 552 (1983); *Goldstone-Tobias Agency, Inc. v. Barbroo Enterprises Productions, Inc.* 237 Cal.App.2d 720, 722, 47 Cal.Rptr. 347 (1965). However, surrender of a possibly meritless claim which is disputed in good faith is valid consideration. *Stub v. Belmont*, 20 Cal.2d 208, 124 P.2d 826, 831 (1942); *Union Collection Co. v. Buckman*, 150 Cal. 159, 88 P. 708, 710

---

[6]"Section 526a" of the Code of Civil Procedure provides in part:

"An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein. This section does not affect any right of action in favor of a county, city, town, or city and county, or any public officer; provided, that no injunction shall be granted restraining the offering for sale, sale, or issuance of any municipal bonds for public improvements or public utilities."

Under the terms of this statute, the courts have allowed taxpayers to sue state officials to enjoin them from illegally expending state funds. (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 268; *Central Valley Chap. 7th Step Foundation* v. *Younger* (1979) 95 Cal.App.3d 212, 232; *Los Altos Property Owners Assn.* v. *Hutcheon* (1977) 69 Cal.App.3d 22, 26-30.)

(1907). The rationale of these cases is that parties who settled in order to avoid litigation should be given the benefit of their bargain.

"The district court determined that Murphy's claim was legally invalid. The court held, `[i]n light of the court's ruling that the estate had no valid claim to the interest to compromise, the court must conclude that there is no valid consideration to support the alleged accord.' The district court erred in equating the potential validity of the claim ex ante with its own ex post conclusion as to the merits of the claim. A court cannot base its judgment on the validity of the claim on its determination of the merits of the claim to determine if there was consideration, or else an agreement to settle would be effectively nullified. *Stub*, 124 P.2d at 831.

"Although California case law does not precisely define the term `invalid,' `the relinquishment of a *colorable* legal claim' is valid consideration. *Orange County Foundation*, 139 Cal.App.3d at 200, 188 Cal.Rptr. 552 (emphasis added). . . ."

The court went on to note:

"Some California cases suggest that even surrender of an invalid claim is sufficient consideration if the party compromising the claim is unaware that the suit is meritless. *See, e.g., McPike v. Superior Court of San Francisco*, 220 Cal. 254, 30 P.2d 17, 19 (1934); *Union Collection*, 88 P. 708 at 710." (*Id.*, at p. 1423, fn. 1.)

Where liability is certain, compromise is unavailable. (62 Ops.Cal.Atty.Gen. 504, 508 (1979).) If a dispute is bona fide, however, settlement of the claim will not violate the "gift clause" because consideration would be present. Any settlement in the present circumstances by the Controller with a property holder would extinguish the liability for interest that might be due for failure to report or pay or deliver the unclaimed property. Here, again, the proposed "waiver" of interest statutorily due must be distinguished. When the liability is uncertain, the settlement does not constitute a "waiver" of that which is certain.

In answer to the second question, therefore, we conclude that in the event there is an actual dispute as to the existence, value, or time for the reporting of unclaimed property, the Controller may, after full examination, enter into a settlement agreement with the property holder compromising the possible interest that may be due for the failure to report or pay or deliver the unclaimed property.

3. Property Subject to Interest Charges

The third issue to be resolved is whether non-cash and non-cash equivalent property is subject to the interest charges of the UPL. We conclude that it is.

We recognize that determining the value of certain unclaimed property in order to apply the interest provision of section 1577 may be somewhat problematical. However, section 1577 does not make a distinction between financial assets having a face value (e.g., bank accounts) and those having a fluctuating value (e.g., stocks) or between intangible assets on the one hand and tangible assets

on the other. *All* assets are subject to the assessment of 12 percent interest if they go unreported or undelivered in contravention of the UPL. This is made clear by the Legislature's use of the phrase "on such property *or value thereof*" (emphasis added) in section 1577. The holder must calculate the fair market value of the tangible or fluctuating value asset, and the Controller must take reasonable steps to verify the accuracy of such calculations. The Controller may, pursuant to section 1580,[7] adopt regulations which establish methods and procedures for determining the value of such assets for purposes of the interest computation.

In answer to the third question, we conclude that non-cash and non-cash equivalent property is subject to the interest charges which accrue for failure to report or pay or deliver unclaimed property.

* * * * *

---

[7] Section 1580 provides that the Controller "is authorized to make necessary rules and regulations to carry out the provisions of [the UPL]."